GEORGE T. LARCOM & others, petitioners, *vs.* WILLIAM M. OLIN.

GRORGE T. LARCOM & others, petitioners, *vs.* WILLIAM M. OLIN & another.

Suffolk. October 23, 1893. — November 10, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Mandamus — Injunction — Unconstitutionality of General Law relating to constituting Municipal Governments — General Powers of Court of Equity — Prohibition.*

The intention of Amendment II. of the Constitution of Massachusetts, relating to constituting municipal or city governments, is that the General Court should act upon each application made pursuant to that amendment, and should grant or withhold a charter according to its judgment, and if it grant one that it should grant such powers, privileges, and immunities not repugnant to the Constitution as it may deem necessary or expedient in each case; and it is not competent for the General Court by a general statute to empower the inhabitants of towns containing twelve thousand inhabitants or more to become cities according to articles prescribed in St. 1892, c. 377, at the will of a majority of the inhabitants present and voting at a meeting held for that purpose.

It is not within the general powers of a court of equity to supervise the conduct of public officers in the performance of their official duties, or to prohibit such officers from acting, or to compel them to act, in matters which concern political and personal rights as distinguished from rights of property.

Upon the refusal of a public officer to perform a ministerial duty, mandamus will lie.

Where it was suggested in the brief of the petitioners for a writ of mandamus that courts in some jurisdictions had held that mandamus could not be used as a preventive remedy, the court observed that this objection was not taken by the respondents; yet if valid, and if it affected anything more than the form of the order to be issued by the court, it might perhaps be met by considering the petition as in substance a petition for a writ of prohibition.

THE FIRST CASE was a petition by inhabitants, taxpayers and voters of the town of Beverly, for a writ of mandamus to command the Secretary of the Commonwealth not to attest or deliver to the clerk of said town, or to any other person or persons, a copy of the provisions of the articles of city government in the form consented to by a vote of a majority of the inhabitants of the town present and voting at a meeting called for the purpose in response to the propositions provided in St. 1892, c. 377, § 1.

THE SECOND CASE was a petition by inhabitants, taxpayers and voters of the town of Beverly, against the Secretary of the Commonwealth and the inhabitants of the town, praying that the votes of a majority of the inhabitants present and voting, at a meeting called for the purpose, to apply for and consent to a city government in such town under the provisions of St. 1892, c. 377, be declared null and void, and that the Secretary be perpetually enjoined from attesting or delivering to the clerk of the town, or any other person or persons, a copy of the provisions of the articles of city government.

Hearing before *Morton,* J., who ruled that St. 1892, c. 377, was unconstitutional, ordered both petitions dismissed, and reported the cases for the determination of the full court. The material facts appear in the opinion.

The cases were argued at the bar in October, 1893, and afterwards were submitted on the briefs to all the judges except *Barker,* J.

*E. T. Burley,* for the petitioners.

*A. Hemenway,* (*R. W. Boyden & D. W. Quill* with him,) for the respondents.

FIELD, C. J.   It has always been considered doubtful whether the Constitution of this Commonwealth, as originally adopted, authorized the General Court to constitute city governments. It was probably for this reason that the Constitutional Convention of 1820 recommended the adoption of what is now Art. II. of the Amendments, and the authority of the General Court in this respect must now be determined by the construction to be given to this amendment.   Journal Mass. Convention of 1820–21, 57, 125, 192–196, 407–409.   *Warren* v. *Mayor, &c. of Charlestown,* 2 Gray, 84, 101.   *Hill* v. *Boston,* 122 Mass. 344, 354 *et seq.*   *Opinion of the Justices,* 157 Mass. 595, 599.

The first question suggested is whether this amendment authorizes the General Court to pass a general statute under which a town in this Commonwealth may become a city, provided such town contain twelve thousand inhabitants.   The city of Boston was the first city established, and, so far as we are aware, every town which has been made a city has been incorporated by a special act of the General Court, upon the application of the town, and the act, after it has been passed, has been accepted by the inhabitants of the town before it took effect as an act of incorporation.   City charters, when once accepted, have often been amended by the General Court without any application from the city, and without the consent of the inhabitants.   General statutes for the organization of private corporations began to be enacted as early as the year 1798.   See St. 1797, c. 82; St. 1805, c. 72; St. 1806, c. 66; St. 1824, c. 65; St. 1828, c. 138; Rev. Sts. c. 41, § 7.   The first general statute for the organization of business corporations was St. 1851, c. 133, and since that statute this method of organization has been extended to nearly all kinds of business corporations.   See Pub. Sts. c. 106, §§ 6 *et seq.*   The St. 1892, c. 377, is an attempt, and the first attempt, to apply this principle to the establishment of city governments.   If this statute is valid, then any town containing not less than twelve thousand inhabitants may become a city by holding a meeting pursuant to the first section of the statute, if a majority of the inhabitants present and voting at the meeting vote to "apply for and consent to a city government."   The form of the city government is prescribed by the statute, except that the inhabitants may also vote upon three

propositions, called the second, third, and fourth propositions, in substance as follows : Shall the city council be composed of two boards or one ?   Shall the aldermen, if there be a board of aldermen, be elected for two years, or for one ?   Shall the mayor be elected for two years, or for one ?   If there is an equal number of votes or a failuré to vote upon any of these three propositions, then the proposition is held to have been answered in the affirmative, that is, in favor of a city council composed of two boards, and in favor of an election for two years of the mayor and aldermen.   The selectmen of the town are required to make a return of the votes cast at this meeting to the Secretary of the Commonwealth, and if it appears to him that a majority of the voters of the town present and voting have voted to apply for and consent to a city government, then it becomes his duty to cause " a copy of the provisions of the articles of government, in the form in which they have been consented to by vote of the town in response to the second, third, and fourth propositions, supplying therein the name of the town in the proper blanks, to be properly engrossed and attested and delivered to the town clerk of said town.   The articles of government as so consented to and attested shall constitute the powers, privileges, and immunities to be in force and effect for the government of such town, to the extent and in the manner in said articles set forth."   St. 1892, c. 377, § 2.   The articles of government, when so attested and delivered, constitute the charter of the city, and they are to be printed with the Acts and Resolves of the General Court of the next succeeding year.   The effect of the statute is, that the General Court exercises no discretion in the establishment of city governments under the statute, except in prescribing by a general law the articles of government.   If a majority of the inhabitants present and voting at a meeting duly called pursuant to the first section vote to apply for a city government under the statute, the town becomes a city without any further act of the General Court or of the inhabitants.

The question most argued in the present cases is how it is to be ascertained whether the town of Beverly contained twelve thousand inhabitants on September 7, 1893, when a majority of the inhabitants present and voting at a meeting held on that day voted to apply for a city government under the statute.   The

town, by the census of the United States of the year 1890, or by the State census of the year 1885, or by any earlier United States or State census, was not found to contain as many as twelve thousand inhabitants.    The inhabitants of the town, at a meeting held on March 6, 1893, appointed a committee to take a census, and that committee reported, at a meeting held on August 24, 1893, that the number of the inhabitants was 13,111, and the town accepted the report and requested the selectmen to call the meeting which was held on September 7, 1893, when a majority of the voters present voted to apply for a city government. The correctness of this census is denied by the petitioners in these cases, who offered evidence tending to prove that the enumeration was false, and that it was made with the fraudulent purpose of inducing the voters of the town to vote for a city government under the belief that the town had twelve thousand inhabitants when in fact it had not so many.    The presiding justice reported the cases without trying this issue.    The census taken was unauthorized by any law, unless St. 1892, c. 377, impliedly authorizes a town to take such a census.    One contention of the respondents is, that the statute impliedly authorizes a town to ascertain the number of its inhabitants in any reasonable manner, and that the plan adopted by the town of Beverly was a reasonable method, and that this enumeration is conclusive, particularly as the Secretary of the Commonwealth, in his answer to the plaintiffs' petitions, says that "he is satisfied that said town of Beverly is, and was upon the seventh day of September, 1893, a town containing twelve thousand inhabitants."    In reply it is said that the General Court cannot delegate to the Secretary of the Commonwealth the power to find a fact which is a condition precedent to the establishment of a city government; that it has not attempted to do so; that it has not authorized a town to take a census for itself; and that unless the correctness of the census taken can be tried by the court the statute is ineffectual, because it is incomplete.

In framing the statute of 1892, c. 377, it is plain that the General Court intended to comply with Article II. of the Amendments of the Constitution.    The proviso of that amendment is, "that no such government shall be erected or constituted in any town not containing twelve thousand inhabitants, nor unless it

be with the consent and on the application of a majority of the
inhabitants of such town, present and voting thereon, pursuant
to a vote at a meeting duly warned and holden for that purpose."
The brief of the respondents contains a reference to several
cities incorporated by the General Court which did not contain
twelve thousand inhabitants according to the State or national
census next preceding the act of incorporation. In such cases
the General Court must have been convinced by the report of
committees, or in some other manner, that the town which it
was incorporating into a city had acquired the requisite number
of inhabitants since the last census. This practice of the Gen-
eral Court was introduced to show that it has never felt that the
enumeration of the last preceding census, whether State or na-
tional, was conclusive, or that it was necessary that any census
should be taken, but that the General Court has been of opinion
that it might ascertain the fact in any manner it saw fit, and act
upon it. The danger, however, of permitting a town to take its
own census for the purpose of reaching a result which a majority
of the voters desire to have accomplished was urged at the argu-
ment. The difficulty of deciding how the fact that a town con-
tains twelve thousand inhabitants is to be ascertained, except by
a census taken by public officers according to law in cases where
the General Court does not directly pass upon the question, de-
serves to be considered in determining whether a city govern-
ment can be established under a general statute without any
special act of the General Court.

The debates in the Constitutional Convention of 1820 show
that the delegates had a great regard for the system of town
government as it existed in the Commonwealth. The charac-
teristic difference between a town and a city in this Common-
wealth is, that in a town the qualified voters meet together in
town meeting, elect town officers and transact the town business,
while in a city the voters elect the mayor, aldermen, and council-
men and these elect or appoint the other city officers and trans-
act the city business. The great difficulty felt in the convention
was, that, when the population of a town is large, it becomes im-
practicable for all the voters to meet together in town meeting and
transact the town business. The experience of the town of Bos-
ton, which in 1820 had something over forty thousand inhabit-

ants, showed this.    In such cases it was thought that it might be necessary, if the affairs of a municipality were to be intelligently carried on, that the voters should be deprived of a direct participation in its affairs, and should act through representatives to be elected for the purpose.    The proviso was inserted in the proposed amendment that the voters in small towns might continue to hold their ancient privileges of managing their own town affairs.    The limit was fixed at twelve thousand inhabitants, and it was also provided that, although the town contained twelve thousand inhabitants, the General Court should not constitute it a city government except " with the consent and on the application of a majority of the inhabitants," etc.    The practical construction put upon the proviso has been that the town must first make an application to the General Court by a vote of its inhabitants, and, if an act of incorporation is passed pursuant to the application, that the act must be submitted for acceptance to the inhabitants.    Whether two meetings and two votes are necessary or not, certainly there must be an application and a consent manifested by a vote pursuant to the proviso.    The General Court cannot constitute a small town a city in any manner, and it can constitute a town containing twelve thousand inhabitants or more a city only upon its own application, and the General Court is not required to constitute such a town a city if it makes the application, but is only authorized to do so if it sees fit.    If the General Court sees fit to constitute such a town a city, it may " grant to the inhabitants thereof such powers, privileges, and immunities not repugnant to the Constitution as the General Court shall deem necessary or expedient for the regulation and government thereof," etc.    This means, we think, that the General Court, upon the application of any town containing twelve thousand inhabitants or more, shall not only decide whether it will  constitute  a  city  government  in  the  town,  but,  if  it  decides  to  do  this,  shall  also  decide  what  powers,  privileges,  and immunities not repugnant to the Constitution it will grant.    All towns of twelve thousand inhabitants or more may not require the same charter, even if they are constituted city governments; the number of the population, the territorial situation, the pursuits and character of the people, their traditions and peculiar town  institutions, as well as the probable future growth of the

town, all may well be considered by the General Court, not only in deciding whether a city government should be established, but, if established, what the provisions of the charter should be. The minority of the town, according to the usual practice, would be heard by the General Court or its committees, and they would not be deprived of their privileges of directly taking part in municipal affairs, except by the judgment of a disinterested tribunal, such as the General Court is. It seems to us that the intention of the amendment is that the General Court should act upon each application made pursuant to the amendment, and should decide to grant or withhold a charter according to its judgment; and if it decides to grant one, that it should grant such powers, privileges, and immunities not repugnant to the Constitution as it may deem necessary or expedient in each case, and that it is not competent for the General Court by a general statute to empower the inhabitants of towns containing twelve thousand inhabitants or more to become cities, according to articles prescribed in the statute, at the will of a majority of the inhabitants present and voting at a meeting held for the purpose. We are aware that, under the constitutions of some of the States, municipal corporations, including cities, can be constituted only by general laws, or can be constituted either under general laws or by special acts; Dillon, Mun. Corp. (4th ed.) §§ 45 *et seq.*; but it would serve no useful purpose to compare their constitutions with our own, as each State has its own history and policy on this subject.

The question of remedy was somewhat discussed. There are two petitions, one for mandamus, and one for an injunction, signed by more than twenty inhabitants, taxpayers and qualified voters, of the town of Beverly. The report of the single justice states: " The defendants in both petitions expressly waived all question of the sufficiency of the parties in the petition for mandamus, and also agreed that, if necessary, after the making of such waiver, the petition for mandamus might be amended so as to make the same an information in the name of the Attorney General for mandamus, with the petitioners as relators, and also that the inhabitants of the said town of Beverly in their corporate capacity, if a necessary party, might be named respondents in said petition for mandamus." It also appears that " the inhabitants of the town of Beverly appeared in re-

sponse to an order of notice, and were admitted to take upon themselves the defence of the petition " for mandamus under the provisions of Pub. Sts. c. 186, § 15.   Both parties desire a decision upon the merits, and it is plainly better, if it can be done, that a decision be made before the organization of a city government under the articles of government.   The only contention of the respondents on the subject of process is, that the bill in equity for an injunction cannot be maintained.   We are of this opinion. It is not within the general powers of a court of equity to supervise the conduct of public officers in the performance of their official duties, or to prohibit such officers from acting or to compel them to act in matters which concern political and personal rights, as distinguished from rights of property.   *Carlton* v. *Salem*, 103 Mass. 141.   *Chandler* v. *Boston*, 112 Mass. 200.   *Baldwin* v. *Wilbraham*, 140 Mass. 459.   *Steele* v. *Municipal Signal Co.*, *ante*, 36.

The Pub. Sts. c. 150, § 3, empower this court to " issue writs of error, certiorari, mandamus, prohibition, quo warranto, and all other writs and processes, to courts of inferior jurisdiction, corporations, and individuals, necessary to the furtherance of justice and the regular execution of the laws."   The duty of the Secretary of the Commonwealth under the statute, if the statute were valid, seems to be ministerial only, and upon the refusal of a public officer to perform a ministerial duty mandamus would lie.   *Warren* v. *Mayor, &c. of Charlestown*, 2 Gray, 84.   *Attorney General* v. *Boston*, 123 Mass. 460.   *Braconier* v. *Packard*, 136 Mass. 50.   *United States* v. *Blaine*, 139 U. S. 306.   Whether the petition should have been brought by the Attorney General, or may be brought by the inhabitants and taxpayers, is a question which we understand it is unnecessary to decide, because it is agreed that if necessary the Attorney General may be made the party petitioner, and the respondents in their brief make no objection to the petition for mandamus in its present form.   We therefore regard the objection that the writ was applied for by taxpayers and voters of the town as waived.   See *Attorney General* v. *Boston, ubi supra.*   It is suggested in the brief of the petitioners that courts in some jurisdictions have held that mandamus cannot be used as a preventive remedy ; but this objection is not taken by the respondents, and, if it affects anything

more than the form of the order to be issued by the court, it may perhaps be met by considering the petition as in substance a petition for a writ of prohibition.

The result is that, in the opinion of a majority of the court, the petition for an injunction must be dismissed, and the prayer of the petition for mandamus must be granted.

*So ordered.*