# Richmond

## F. H. SANDERS AND OTHERS v. THE COUNTY SCHOOL BOARD OF PRINCE WILLIAM COUNTY.

March 24, 1932.

Present, Campbell, C. J., and Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Charles Pickett* and *F. S. McCandlish*, for the plaintiffs in error.

*Thomas E. Didlake* and *Robert A. Hutchison*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The county school board of Prince William county presented its petition to the circuit court of that county, praying that the court order the proper officials to hold an election in Gainesville district, for the purpose of taking the sense of the qualified voters on the question of issuing bonds, not to exceed the sum of $40,000.00, the proceeds to be used in erecting, building and furnishing, or equipping, an additional school building in the town of Haymarket, and for improvements to the colored school at or near the village of Thoroughfare.

The court, on February 7, 1930, entered an order fixing March 28th as the date for holding the special election, and directing that notice of the election be published. The report of the commissioners of election showed the result to be a majority of twenty-two in favor of the bond issue, out of a total vote of 394.

When the school board, at the next term following the election, moved the court to enter an order authorizing it and the board of supervisors to proceed with the issue of bonds, F. H. Sanders and others, claiming to be qualified voters of said district, objected on the ground that the said "election was illegally called, was called for an illegal purpose, and was illegally conducted." This objection was overruled and the order was entered, but on motion to set aside this order on the same grounds, the case was continued, with the right to any party in interest to offer testimony in support of, or in opposition to, the motion. This order is referred to as the order of April 15, 1930.

At the June term of court, the case was submitted to the judge in vacation, who on July 7th entered a final order, overruling the motion and sustaining the former ruling, in the following language: "That the said order entered on April 15, 1930, directing the board of supervisors and the county school board of said county to proceed to carry out the wishes of the voters stand in full force and effect as entered, to which action of the court the said F. H. Sanders and others, by counsel, excepted."

F. H. Sanders and a number of other citizens on April 5, 1930, filed a petition in the clerk's office, and on the same day caused copies of the same to be served upon the chairman of the county school board and the chairman of the board of supervisors. The object of this petition was to contest the election of March 28th on various grounds. The county school board and numerous other citizens moved to dismiss, demurred, and filed an answer to this petition. On July 7th a separate order was entered dismissing the petition. F. H. Sanders and others are here complaining of both the final orders above mentioned.

We are confronted with a motion made by the school board to dismiss the writ of error in this case. Numerous grounds are alleged, but only one merits consideration, *i.e.,*

that the plaintiffs in error are seeking a review of two separate law proceedings by one writ of error.

■ Proceedings to call an election to ascertain the wishes of the qualified voters of a county on the question of a bond issue for the erection of public buildings are purely statutory and are *ex parte*, but any tax-payer or qualified voter has a right to become a party to the proceedings and show, if he can, that the proceedings are not in comformity with the statute.

F. H. Sanders raised this issue when he appeared in opposition to the order of April 15th. The petition which he and others caused to be filed in the clerk's office on April 5th attacks the validity of the election on two grounds: (1) On the ground that the election was improperly conducted, making various allegations in support of this contention; (2) that the petition for calling the election and the order authorizing it were prepared and entered in accordance with a statute which had been repealed, and that the proceedings did not conform to the law in effect, and hence were void.

■ The courts may hear election contests only when power is given them by statute. There is no statute law in Virginia authorizing the courts to determine the contest of such an election as is here under consideration, hence that part of the petition attacking the conduct of the election may be treated as surplusage, and the other part of the petition regarded as the written objections to the orders of February 7th and April 15th. So regarded, the so-called two proceedings may be treated as one, as the objections to the order of April 15th raised by F. H. Sanders and others, *i.e.*, that "the election was illegally called and was called for an illegal purpose," appear to be identical with those stated in paragraphs numbered six and seven of the petition.

The pleadings in the case are inaptly drawn and were evidently prepared before the attorneys familiarized them-

selves with the law applicable, and the record, as the brief for the defendants pertinently states, is "badly scrambled."

However, the first assignment of error is clearly stated to be based on the fact that the judge of the circuit court was never asked to approve, and the record does not show that he did approve, the action of the school board in seeking to issue bonds.

On the face of the proceedings it appears that the draftsman was attempting to, and did substantially, follow the provisions of the statutes in force prior to June, 1928. The order of February 7, 1930, calling the election, states that the school board filed its petition "in pursuance of chapter 34 of the Code of Virginia." But the General Assembly of 1928 (page 1186, chapter 471) by an act, title to which, in part, is "an act to revise, consolidate, amend and codify the school laws of Virginia," had repealed this chapter and made substantial changes in the requirements for calling an election to ascertain the wishes of the voters on the question of issuing bonds for the purpose of securing funds to be used in the erection of public school buildings. Under the old law, the judge was not required to approve the act of the school board before ordering the election. His duty to order the election was mandatory when he ascertained that the school board had complied with the conditions required by the old section 769. The act of 1928, whether wisely or not, places this added burden upon the judges of circuit courts. Section 673 of the new act, in part, reads thus:

"Whenever it shall be necessary for a county *to erect* a schoolhouse, it shall be lawful for the school board of such county to contract a loan for said purpose, on the credit of the county, in the manner other loans are authorized to be contracted by sections 2738, 2739, 2740 and 2741 of the Code of Virginia." (Italics supplied.)

The sections mentioned prescribe the conditions required

to be fulfilled before the counties may borrow money for the purpose of erecting a courthouse, jail, etc. Securing a loan by bond issue for the erection of schoolhouses is now made to conform to the same conditions and procedure. The pertinent part of section 2738 is:

"Whenever it shall be necessary for a county to erect a courthouse, clerk's office or jail, or poorhouses, or to repair or enlarge the same, it shall be lawful for the board of supervisors of such county to contract a loan for said purpose on the credit of the county; provided, *that the power shall not exist*, and the loan shall not be contracted for, *unless* and *until* the action of the board of supervisors *shall* be certified to the *judge* of the circuit court of the said county, *approved by him* and also approved by the qualified voters of said county at an election held for that purpose, as hereinafter provided.

"The said *approval* of the *judge* of the circuit court *shall be entered*, together with the certificate of the action of the said board, on the records of the circuit court.

"*If* the *judge* of the circuit court *approve the proposed loan and bond issue*, his *approval shall be entered* upon the records of the circuit court * * *.*" (Italics supplied.)

The emphasis placed on the approval of the judge by the wording of the section clearly reveals the intention of the legislature to impose upon him the imperative duty to ascertain for himself the necessity for the issuance of such bonds before ordering an election.

■ The school board contends that the fact that the judge entered the order directing that the election be held is of itself conclusive proof that he did approve the proposed bond issue. This contention loses its force when it is established as a fact that the school board and the judge, in the order of February 7th, stated that they were acting under chapter 34, which did not require the judge's approval, while the law in force at the time not only required that

approval, but in express language denied the power to contract the debt unless the judge's approval was obtained and spread on the records of his court.

■ The rule that the judgment of a court of competent jurisdiction is always presumed to be right until the contrary is shown does not apply to this case, as it affirmatively appears that the attention of the judge was not called to the change in the statute which placed upon him the responsibility to approve the action of the school board before calling the election.

The result of the election was close, thereby showing that there was room for doubt as to the necessity for the issuance of bonds. How the judge would have determined the matter is unknown, as he was not requested to exercise his judgment prior to the election.

The legislature, in order to prevent encumbering unnecessarily the future revenues of the counties, has required the approval of three parties acting separately: (1) The county school board, upon whom rests the responsibility of managing local school affairs; (2) the judge of the circuit court, who is in a position to determine the necessity of the proposed loan in the light of existing conditions affecting the county as a whole (the record must show that the board and the judge have reached the conclusion that the necessity exists before an election can be legally called); (3) the affirmative vote of a majority of the voters participating in the election.

There is nothing doubtful or ambiguous in the terms used, the language is plain and the meaning clear. To repeat, "the power shall not exist unless and until the action of the board shall be * * * approved by him (the judge) * * * the said approval shall be entered on the records." Section 2740, in part, reads thus: "Upon the proceedings under the two preceding sections being had, *and not other-*

*wise*, the board of supervisors is authorized and empowered to issue the bonds," etc.

 Since the approval of the judge was not obtained and such approval not entered on the records of his court prior to the calling of the election of March 28th, the entire proceedings are void.

This is decisive of the case, hence it is needless to discuss the other errors assigned.

For the reasons stated, the judgment of the trial court is reversed.

*Reversed.*