# Richmond

## Mrs. Emory Cundiff v. A. B. Jeter, et al.

April 17, 1939.

Record No. 2005.

Present, All the Justices.

The opinion states the case.

*Royston Jester, Jr.,* and *Royston Jester, III,* for the appellant.

*Paul H. Coleman,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

Pursuant to Code 1936, section 4675 (30), (Alcoholic Beverage Control Act) the circuit court of Campbell County ordered the proper election officials to open the polls on September 21, 1937, and permit electors of the town of

Altavista to vote upon the question of the sale of wine and beer, and the sale of alcoholic beverages other than wine and beer. After these two questions had been submitted, the commissioners of election certified "that 177 votes were cast in said election for the sale of wine and beer, and that 138 votes were cast in said election against the sale of wine and beer, and therefore the highest and largest number of votes cast in said election were cast for sale of wine and beer; and we further determine and declare that 157 votes were cast in said election for the sale of whiskey or for A. B. C. store and that 159 votes were cast in said election against the sale of whiskey, or against A. B. C. store, and therefore that the highest and largest number of votes cast in said election were cast against the sale of whiskey, or against A. B. C. store."

"We further certify that eleven ballots cast in said election were not counted because they were void."

At second October rules, 1937, some twenty electors who participated in the election filed a bill in chancery attacking the validity of the election, and the return of the commissioners of election on three grounds: (1) That the ballots were counted in secrecy and in violation of Code, section 177, (2) that there was a discrepancy in the number of votes cast and the number of ballots returned, and (3) that eleven ballots were illegally rejected. The three election judges and the three clerks, one of whom served only a part of the day, were named respondents in the bill.

Mrs. Emory Cundiff, one of the judges of election, was the only respondent who made any defense to the suit. She demurred to the bill on the ground that a court of equity has no jurisdiction to determine a contest of an election. After her demurrer was overruled, she filed an answer in which she charged that some twenty-one other votes cast in the election were invalid.

At the conclusion of the introduction of the testimony, which was heard *ore tenus,* the trial court entered a final decree, which, in part, reads as follows: " * * * it further appearing to the Court from the aforesaid evidence

that the ballots cast in said election which were counted by the said judges and commissioners thereof should be recounted and that an examination of the aforesaid eleven ballots, alleged to be void, should be made, and the Court, upon a recount of the aforesaid ballots and an examination of the aforesaid eleven ballots, alleged to be void, being of opinion that four of the said last mentioned ballots, rejected and not counted by the aforesaid judges and Commissioners of Election, as aforesaid, were valid, within the intent and meaning of the election laws of the State of Virginia, doth so decide, and upon giving effect thereto, as well as giving effect to the recount aforesaid, doth hereby adjudge, order and decree that the true result of the aforesaid election in the aforesaid Town as appears by a complete recount of all of the aforesaid ballots is one hundred and seventy-seven votes for the sale of beer and wine therein and one hundred and thirty-eight votes against the sale of same therein and one hundred and fifty-nine votes for the sale of alcoholic beverages other than beer and wine therein and one hundred and fifty-seven votes against the same, and that the result herein set forth as found by the Court is the true and correct result of the aforesaid election, and by this order, the Court doth enter of record the result of the election to be as aforesaid."

While there are five assignments of error, the only question presented is whether a court of equity has jurisdiction to hear and determine the contest of an election held under Code 1936, section 4675 (30).

Section 39 of the Constitution declares that the legislative, executive and judicial departments shall be separate and distinct so that neither exercise the power properly belonging to the others, nor any person exercise the power of more than one of them at the same time. Section 36 provides that "the general assembly shall enact such laws as are necessary and proper for the purpose of securing the regularity and purity of general, local and primary elections, and preventing and punishing any corrupt practices in connection therewith; * * * ." Section 56 further provides

"(Directions to general assembly concerning elections and declaring offices vacant.—) The manner of conducting and making returns of elections, of determining contested elections, * * * , shall be prescribed by law, * * * ."

The General Assembly has exercised the power thus conferred upon it by making elaborate provision for the contest in both primary (Code, section 247, as amended by Acts 1936, ch. 186) and general elections (Code, secs. 259-268, as amended by Acts 1936, ch. 186) of candidates to public office. In every such contest the act states with precision who shall be the complainants, the time in which the complaint shall be filed, the notice to be given, the parties who may reply, and the tribunal which shall have power to hear and determine the contest. In no event is either party given the right to appeal, as the acts expressly provide that the judgment of the tribunal having the conferred power to decide such controversies shall be final.

Provisions are found in Code 1936, secs. 674-e and 674-k, for the contest of a referendum to the qualified voters of a political subdivision of the Commonwealth on the question of incurring a bonded debt for the benefit of the public schools. In each of these sections it is stated that "if such contest shall not have been begun within the thirty days herein prescribed, the authority to issue the bonds, and the validity of the taxes necessary to pay the principal and interest of bonds, shall be conclusively presumed, and no court shall have authority to inquire into such matters."

Code, section 2754, provides the procedure for the contest of an election held to determine the sense of the qualified voters on a bond issue for the removal of a courthouse from one site to another, confers jurisdiction upon the circuit court of the county in which such election is held to hear and determine such contest, and expressly states that "the judgment of said court shall be final."

Prior to 1916, when prohibition (the Mapp Act, chapter 146) was adopted, certain acts known as the local option law were in force. Sections 581-586 of the Code of 1887 provided the method by which the sense of the qualified

voters of the counties, cities and towns could be taken on the question of licensing the sale of intoxicating liquors in the respective localities. While these provisions for referendum were adopted in 1885, no provision was made for contest of the election until November 28, 1903, when chapter 328 of the Acts of 1902-3-4 was adopted. This chapter named the parties, the method of giving notice and the time in which a complaint contesting the election should be filed, and authorized any voter who had participated in the election to become a party defendant to the proceedings. The circuit court of the county, and the corporation or hustings court of the city, were authorized to hear and determine the case without a jury, "and the judgment of said court shall be final."

While these acts of the General Assembly have no direct bearing upon the question presented in the case now under consideration, we cite them for the purpose of showing that in the procedure prescribed for an election contest, either of a candidate for public office, or of a referendum to ascertain the sense of the qualified voters on questions of public interest, none of the rules which govern a suit in equity are followed. It is significant to note that from the very organization of the Commonwealth in 1776 to date, there has been no case, at least no case has been cited by counsel, and we have not been able to find one, in which a court of equity has asumed jurisdiction on the sole ground that the question involved was the contest of an election.

These statutory provisions require the determination of every election contest to be decided with dispatch. In most, if not in all, the judgment of the lower tribunal is made final, thereby preventing the delay which would necessarily result if this court were empowered to review such proceedings. In view of the constitutional mandates, the pertinent acts of the legislature and the origin and history of the jurisdiction of courts of equity, it would seem beyond controversy that the public policy of this Commonwealth has been, and is to regard all contests of elections as purely political.

In the absence of statute, how could the chancellor determine the proper parties, complainants or respondents? It so happens that in this particular case the referendum was submitted to a town in which one set of election officials served the entire voting unit. If the questions had been submitted to the county of Campbell, would all of the election officials of the county have been proper or necessary parties? The respondents in question have exercised their judgment, performed their duty as election officials and made their return. Their interest in the outcome is the same as that of any other qualified voter. Why should they, rather than some other voters who participated in the election, be made parties to the suit? "The right to contest elections is purely statutory and controlled by the statute. In elections of public questions of this character, there would not, in the absence of a statute, be any one against whom a contest proceeding could be instituted." *Campbell* v. *Mason,* 269 Ky. 128, 106 S. W. (2d) 100, 102.

This court has held that if it appeared upon the face of the proceedings that the election was void a collateral attack could be made upon it in any proceeding. *Chalmers* v. *Funk,* 76 Va. 717; *Haddox* v. *County of Clarke,* 79 Va. 677, and *Sanders* v. *County School Board,* 158 Va. 303, 163 S. E. 394, 395.

In the *Sanders Case, supra,* we said: "The courts may hear election contests only when power is given them by statute. There is no statute law in Virginia authorizing the courts to determine the contest of such an election as is here under consideration * * * ."

It was held in *Bull* v. *Read,* 13 Gratt. (54 Va.) 78, that equity had jurisdiction upon the application of one or more of the taxpayers of a school district to enjoin a board of school commissioners from levying a tax until the validity of the act under which it was proceeding could be ascertained. This case was followed and cited with approval in *Redd* v. *Henry County,* 31 Gratt. (72 Va.) 695, in which the question of the action of certain election officials was only incidentally drawn into the controversy.

In 18 Am. Jur. 359, this is said: "It is a firmly established general rule that the jurisdiction of courts exercising general equity powers does not include election contests, unless it is so provided expressly or impliedly by organic or statute laws. The reason for this exclusion is that the questions involved are political * * * ." And, again, at page 387: "In considering the general powers of the courts, a distinction has been drawn between the jurisdiction of courts of equity and of law, based upon a distinction between political and civil rights. Since the right of suffrage is political, the accepted rule is that its assertion and protection are not properly matters for the cognizance of courts of equity. The extraordinary jurisdiction of courts of chancery cannot, therefore, be invoked to protect the right of a citizen to vote or to be voted for at an election or his right to be a candidate for, or to be elected to, any office; nor can such jurisdiction be invoked for the purpose of restraining the holding of an election or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held. If a public officer, charged with political administration, has disobeyed or threatens to disobey the mandate of the law, whether in respect of calling or conducting an election or otherwise, the party injured or threatened with injury in his political rights must seek his remedy in a court of law, and not in a court of chancery. However, if an illegal election affects property rights as well as rights of a political nature, equity will interfere; * * * ."

█ It is now argued that this is not an election contest but an attempt to correct a mistake in the result of an election. Every election contest is instituted for the purpose of obtaining a different result from that reported by the commissioners of an election. This is usually done by proof that a legal fraud was perpetrated, or that a mistake in law or a mistake in fact was committed. The contest now under consideration was instituted by twenty citizens who alleged that as qualified voters of the town of Altavista they had a right to maintain this suit in equity. The bill contains a

number of allegations of irregularities alleged to have been committed in the conduct of the election, and errors of law committed by the judges of election. Among others, the bill contains this allegation: "Your complainants are advised and therefore charge that a Court of Equity has *inherent, original jurisdiction* to inquire into the election, aforesaid, the counting of the aforesaid ballots and the *other incidents thereto and to determine and declare whether or not it was done in accordance with law and whether or not the returns, set forth in the certificate* of the Commissioners constitutes the true and correct returns in the aforesaid election; your complainants are further advised and therefore charge that by reason of the fact that the election aforesaid originated under and by virtue of an order of the Court and that this Honorable Court is charged, under the law, with the duty of entering an order, setting forth the true result of the election, heretofore adverted to, that this Honorable Court has *plenary, equitable jurisdiction to determine the questions aforesaid, and to order and require that the ballots be correctly counted and whether the ballots, said to be void, by the Judges, were, in fact, legal or void, and to further determine whether or not there was, in fact, an election on the issues mentioned, in accordance with law."* (Italics supplied.)

It is, therefore, apparent that appellees base their contention on the inherent power of a court of equity to hear and determine an election contest, and it was on this ground alone that the chancellor entertained jurisdiction of the cause in the lower court.

In *City of Roanoke* v. *Elliott,* 123 Va. 393, 413, 96 S. E. 819, 826, Judge Burks, speaking for the court, said: "In the cases at bar, the judge was to receive the returns from the commissioners of election and to 'declare the results, as shown by the face of the returns.' This was a ministerial duty. *McKinney* v. *Peers,* 91 Va. 684, 22 S. E. 506. If, after stating the total votes cast and the number of votes for and against the change, he drew a wrong conclusion as to the certificate he should make, that did not render the duty

imposed upon him any the less ministerial. He was to ascertain and certify a fact, to-wit, Did 'a majority of the electors, qualified to vote at such election,' vote for or against the proposed change? This the judge did, and while we are of opinion that he was then discharging a ministerial duty, still whether his construction of the statute was right or wrong, or his duty was ministerial or judicial, no writ of error to, or appeal from, his order is given by this or any other statute of this State. In several of the cases above cited, the judges misconstrued the law, but it was held that no writ of error or appeal was allowable."

The judge of the trial court did not purport to act in the performance of a ministerial duty in opening and recounting the ballots, but in his official capacity as chancellor of a court of equity, and it is in *that capacity* that we hold he had no jurisdiction to entertain the cause.

The General Assembly has the inherent power to prescribe the conditions and circumstances under which it may permit the sale of alcoholic beverages other than wine and beer within the town of Altavista. This it may do with or without the approval of the majority of the qualified voters within the town. It has seen fit to authorize or withhold the sale of such beverages upon the approval or disapproval of the majority of the qualified votes cast in an election called for the purpose of ascertaining their wishes. In determining this question the General Assembly provided the only method of ascertaining the result of the referendum when, without further provision, it placed this duty upon certain designated election officials. It has made no provision for the recount of the ballots after the returns have been made and the certificate filed. The General Assembly can, at its next session, repeal the whole or any part of the Alcoholic Beverage Control Act. The property rights of neither complainant nor respondents are involved in this litigation, nor would any property rights be infringed upon if the whole act were repealed. The entire subject matter is political. By express mandate of the Constitution the

power to deal with it is vested in the General Assembly, and not in a court of equity.

While a few courts hold to the contrary, the great majority are in accord with the views herein expressed. See *Hester* v. *Bourland* (1906), 80 Ark. 145, 95 S. W. 992; *Bass* v. *Katterjohn* (1922), 194 Ky. 284, 239 S. W. 53; *Hamilton* v. *Carroll* (1896), 82 Md. 326, 33 A. 648; *Litzelman* v. *Town of Fox* (1936), 285 Ill. App. 7, 1 N. E. (2d) 915; *Ulrich* v. *Clement,* 124 N. Y. S. 133; *Elliott* v. *Garner* (1910), 140 Ky. 157, 130 S. W. 997; *Markert* v. *Sumter County* (1910), 60 Fla. 328, 53 So. 613, Ann. Cas. 1912C, 690; *Parmeter* v. *Bourne* (1894), 8 Wash. 45, 35 P. 586, 757; *State ex rel. Woodruff* v. *Dortch* (1889), 41 La. Ann. 846, 6 So. 777; *Patterson* v. *Knapp* (1907), 125 Ky. 474, 101 S. W. 379; *Patterson* v. *People* (1913), 23 Colo. App. 479, 130 P. 618; *Darbonne* v. *Village of Oberlin* (1908), 121 La. 641, 46 So. 679; *Stamper* v. *Hall,* 270 Ky. 164, 109 S. W. (2d) 386; and *Larcom* v. *Olin* (1893), 160 Mass. 102, 35 N. E. 113.

For the reasons stated, the decree of the chancellor is reversed, and a final order is here entered dismissing the suit.

*Reversed and dismissed.*