DR. E. L. EVANS, *et al*

*v.*

K. J. CHARLES, *et al.,* COMMISSIONERS, *etc.*

(No. 10194)

Submitted October 5, 1949. Decided December 6, 1949.

464

Lovins, Judge, not participating.

*W. H. Ballard,* for appellants.

*Samuel A. Christie, Sidney L. Christie,* for appellees.

Haymond, President:

This suit in equity was instituted in the Circuit Court of McDowell County by the plaintiffs E. L. Evans, Adrian Vance, Dell Henderson, W. T. Belcher and Dom Castrodale, to enjoin the issuance, by the defendants K. J. Charles, James Lee and Adolphus Shelton, Commissioners of Election of the Town of Anawalt, a municipal corporation, in McDowell County, of certificates of election to the candidates on the Democratic Ticket for the offices of Mayor, Recorder and Councilmen, at the first election of officers of the town, after its incorporation by the circuit

court in April, 1949, and to set aside and declare void the election held on June 8, 1949.

The town was incorporated, in the manner provided by Article 2, Chapter 8, Code, 1931, and the election on June 8, 1949, was held, before Article 2 was amended by Chapter 83, Acts of the Legislature, 1949, Regular Session, which confers the authority to incorporate, which previously existed in the circuit court, upon the county court of the county.

From a final decree entered June 29, 1949, which sustained the demurrer of the defendants James Lee and Adolphus Shelton to the bill of complaint, refused to permit the plaintiffs to make Lacy Pat O'Brien, Charley Lavender, Harry Brown, Ralph Cochran, Emmett Taylor, Wiley Davis and R. L. Martin, the successful Democratic candidates for the various municipal offices voted for at the election, defendants to the suit, dissolved a temporary injunction previously awarded on June 13, 1949, and dismissed the suit, this Court granted an appeal upon the petition of the plaintiffs.

The material facts involved appear from the allegations of the bill of complaint and on demurrer, if well pleaded, are accepted as true. *Ross* v. *Midelburg,* 129 W. Va. 851, 42 S. E. 2d 187; *Taylor* v. *Spurr,* 126 W. Va. 773, 30 S. E. 2d 84; *Browning* v. *Browning,* 85 W. Va. 46, 100 S. E. 860.

On April 15, 1949, after the requirements of Article 2 of Chapter 8 of the Code of 1931, then in force and effect, had been complied with, the Circuit Court of McDowell County, by order entered of record, directed the clerk of that court to issue a certificate of incorporation for the Town of Anawalt in that county and on April 18, 1949, pursuant to such order, the town was duly incorporated. By order entered April 15, 1949, the circuit court appointed the defendants K. J. Charles, James Lee and Adolphus Shelton, as Commissioners of Election for the municipality, and directed them to hold and conduct the first municipal election in the town on June 8, 1949, to permit its

qualified voters to select a Mayor, a Recorder and five members of a Common Council.

At a convention held on May 4, 1949, the Peoples Party, of which the plaintiffs, who are citizens and qualified voters of the town, are members, nominated the plaintiffs and two other persons as candidates for the municipal offices to be filled at the election; and on May 6, 1949, the Democratic Party, at a convention held at that time, nominated Lacy Pat O'Brien, for Mayor, Charley Lavender, for Recorder, and Harry Brown, Ralph Cochran, Emmett Taylor, Wiley Davis and R. L. Martin for Councilmen, as its candidates. The nominees of these two parties were the only candidates whose names appeared on the official ballot at the election. The entire population of the newly incorporated Town of Anawalt, as shown by the census taken in connection with its incorporation, including men, women and children, numbered 1240 persons and the census was the only available record for use at the first election to determine the qualified voters of the municipality. The results of the election, as certified by the Commissioners of Election, showed that Lacy Pat O'Brien received 338 votes and E. L. Evans 310 votes for Mayor; that Charley Lavender received 329 votes and Adrian Vance 309 votes for Recorder; and that Emmett Taylor received 343 votes, Wiley Davis 343 votes, R. E. Martin 341 votes, Ralph Cochran 327 votes and Harry Brown 324 votes, as against 316 votes for W. T. Belcher, 311 votes for Dom Castrodale, 303 votes for Dell Henderson, 302 votes for H. M. Cochran, and 285 votes for J. R. Brown, for Councilmen.

The bill of complaint alleges that the Commissioners of Election did not make effective use of the census to determine the qualified voters of the municipality; that although there were not more than 500 persons who were legally qualified to vote, 666 votes were cast at the election; and that many persons who were not legal residents of the town or who were under twenty one years of age, or otherwise disqualified to vote, voted at the election; and it names and identifies 27 such persons. It charges

that because the Commissioners of Election did not conduct the election in a lawful manner in permitting many persons not legally qualified to vote to cast illegal ballots, the residents of the town who are qualified to vote, including the plaintiffs, who were also the candidates of the Peoples Party for the various municipal offices, are entitled to have an election conducted in the manner provided by law; that they have been fraudulently deprived of their right to such election; and that the election held on June 8, 1949, does not express the will of the qualified voters of the town.

The plaintiffs assign as error the action of the circuit court (1) in sustaining the demurrer of the defendants to the bill of complaint; (2) in dismissing the bill of complaint; (3) in dissolving the injunction; (4) in denying the plaintiffs access to certain records used at the election; and (5) in refusing permission to amend the bill of complaint.

The controlling question presented by the assignments of error is whether an election of public officers which is alleged to have been illegally held and conducted may, in the absence of a statute conferring jurisdiction upon a court of equity to determine its validity, be originally assailed and set aside in a suit in equity instituted for that purpose.

The plaintiffs contend in substance that the matters involved in this suit are not determinable in an election contest; that the statutes which make provision for a proceeding of that character do not apply in this case; and that, because there is no adequate legal remedy, a court of equity has inherent jurisdiction to determine the validity of an election involving candidates for public office and to set it aside if it has been illegally held and conducted.

There is no statute of this State which confers jurisdiction upon a court of equity to determine the validity of an election in which only the selection of public officers is involved. This is conceded by the plaintiffs. For

that reason they assert that there is no adequate legal remedy and in consequence a court of equity has inherent jurisdiction to entertain this suit.

The system of elections in this State is not of common law origin; and the exercise of the right of suffrage is regulated and controlled by constitutional and statutory provisions. *State ex rel. Robertson* v. *County Court of Kanawha County,* 131 W. Va. 521, 48 S. E. 2d 345. The manner of conducting elections in this State is governed by statutes and the power of the Legislature to deal with elections is plenary except to the extent that it is limited by the provisions of the Constitution of this State or of the Constitution of the United States. *State ex rel. Forsythe* v. *County Court of Cabell County,* 131 W. Va. 570, 48 S. E. 2d 412; *Halstead* v. *Rader,* 27 W. Va. 806. In the exercise of this power the Legislature has enacted, from time to time, numerous statutes with respect to various phases of the election system, in which are included enactments which provide for election contests, confer jurisdiction upon certain tribunals to entertain and determine such contests, and prescribe the time within which they shall be instituted and the manner in which they shall be conducted.

In considering and resolving the contention of the plaintiffs that they are without an adequate legal remedy for the alleged grievances of which they complain and that, for that reason, they are entitled to invoke the aid of a court of equity, it is necessary to examine the statutes relating to election contests and to ascertain whether the matters here involved are within their provisions.

Section 2, Article 9, Chapter 3 of the Code, 1931, which deals with the time within which an election contest may be instituted and the manner in which it may be conducted with respect to any county or district office, contains a provision that "If the contestant object to *the legality of the election,* or the qualification of the person returned as elected" the notice of contest mentioned in the section shall set forth the facts on which such objection is founded.

(Italics supplied.) In considering an earlier statute which contained the same provision, in the case of *Halstead v. Rader*, 27 W. Va. 807, this Court said: "It is evident from the language employed in this statute that the notice must set forth the facts on which the contest is founded, and that the facts so set forth must be sufficient, if sustained by proof, to make it the duty of the court either to declare the contestant elected to the office or *to vacate the election*". (Italics supplied.) The same statutory provision was also considered in *Dryden v. Swinburn*, 15 W. Va. 234, and the opinion in that case contains this language: "The statute, however, on its face, evidently contemplates other grounds on which the contest may be based. Thus it expressly provides that the contestant may object to the legality of the election; and this may be the whole basis of his contest." The concurring opinion of Judge Rose in *State ex rel. Savage v. Robertson*, 124 W. Va. 667, 23 S. E. 2d 281, referring to the statute, uses these words: "It is thus plain that one's election may be contested on the ground of (1) disputed votes; (2) lack of qualification for the position, or (3) illegality of the election. If the contest is based on the last mentioned ground, the contestant, of course, can not allege or show that he himself was legally elected. The election being illegal, it necessarily follows that neither the contestant nor the contestee have any right to the office. Yet the statute would seem to authorize the institution and maintenance of a contest on this ground, and, necessarily by one with no valid claim to be elected, and this construction has been placed on the statute." These quotations show that the legislature has provided an election contest as the means of attacking the legality of an election and that the issue of the validity of the election is determinable in that kind of proceeding.

Section 3, Article 3, Chapter 8, Code, 1931, relating to the first election of officers of a municipality, declares that "all the laws applicable to the election of district officers shall apply to such election, if not inconsistent with the provisions of this article." Section 1, Article 9, Chapter 3, Code, 1931, provides that "In all cases of contested elec-

tions, the county court shall be the judge of the election, qualifications and returns of their own members, and of all county and district officers." Section 6, Article 3, Chapter 8, Code, 1931, dealing with municipal elections, contains this language: "All contested elections shall be heard and decided by the council."

The quoted provision of Section 1, Article 9, Chapter 3, Code, 1931, which by virtue of Section 3, Article 3, Chapter 8, Code, 1931, is made applicable to an election contest in which a municipal office is involved, directly applies to the matter of the illegality of the election of June 8, 1949. The charge of the plaintiffs that the election was illegally held and conducted constitutes the basis of this suit. Though the plaintiffs, as defeated candidates at the election, do not claim that they were elected to any of the offices or that in a contest they could show that any of them was elected, they seek, as the principal relief prayed for, to have the election vacated and set aside in its entirety as illegal and void. The statutory provisions quoted above, read and considered together, prescribe the method by which the legality of an election may be inquired into and determined and afford an adequate legal remedy for that purpose. The remedy thus provided is an election contest and that remedy is not only adequate but it is also exclusive of any other course of procedure. In *Brown* v. *Randolph County Court,* 45 W. Va. 827, 32 S. E. 165, the opinion uses this language: "If any candidate claims that the election is fraudulent or in any wise illegal, or that ballots are unlawfully counted against him, * * * he must get relief by contest as provided in the statute." When a specific mode of contesting an election has been provided by statute that means alone can be resorted to or employed; and all other remedies are excluded. *McWhorter* v. *Dorr,* 57 W. Va. 608, 50 S. E. 838, 110 Am. St. Rep. 815. The jurisdiction conferred by statute, Code 8-3-6, upon the common council of the municipality to hear and decide such contested election is original and exclusive in character. *Moore* v. *Holt,* 55 W. Va. 507, 47 S. E. 251. The alleged illegality of the first election of officers for the

Town of Anawalt on June 8, 1949, should have been raised by the plaintiffs in an election contest, not in a suit in equity; and the only tribunal vested with original jurisdiction to hear and decide such contest is the common council of that municipality selected in that election. *Trunick* v. *Town of Northview,* 80 W. Va. 9, 91 S. E. 1081; *Moore* v. *Holt,* 55 W. Va. 507, 47 S. E. 251; *State ex rel. Thompson* v. *McAllister,* 38 W. Va. 485, 18 S. E. 770, 24 L. R. A. 343.

It may be urged that if the common council of the municipality, chosen at the election which is assailed as illegal and void, should hear and determine the legality of the election, the fundamental and universally recognized rule which forbids any interested person to act as judge in his own case would be violated and transgressed. The answer in such a rare and perplexing situation is that the circumstances of the case constitute an exception to the general rule and require the members of the council to act from sheer necessity. Their interest in the offices for which they were selected in the election does not deprive the council of its exclusive jurisdiction, imposed by statute, to hear and decide a contest involving the legality of the election. The council would have to act for the compelling reason that no other tribunal is by law authorized or empowered to hear or decide the matter in the first instance.

A similar conclusion, based upon the ground of necessity, was reached by this Court in *Stafford* v. *County Court of Mingo County,* 58 W. Va. 88, 51 S. E. 2. In that case, it appears that Stafford and Sheppard were opposing candidates for the office of Prosecuting Attorney of Mingo County at the general election in November, 1904. Upon a recount of the votes the county court, sitting as a board of canvassers, found and declared that Sheppard had been elected. Stafford undertook to file a notice of contest in the county court, which refused to file the notice or docket the proceeding because two of its members were voted for at the same election and their election was contested on the same grounds as those involved between Stafford and Sheppard. In holding that the commissioners were

competent to act in the election contest between Stafford and Sheppard this Court, in an opinion by Judge Brannon, said: "Those commissioners were bound to docket that notice, so as to bring the contest proceeding into being, and state the objection made by the contestee, or enter a motion to quash or dismiss. They were bound to do this much. Certainly the accidental circumstance of two commissioners being interested would not deny Stafford the right to be heard. To deny his motion to docket would likely have defeated any chance for him to be heard. Again, the Code gives him a right to an appeal against a partial judgment and that would be defeated. But, in the second place, we hold that those two commissioners were bound to do, not only so much as just indicated, but to decide that objection to the docketing of the notice, or any other matter and the full merits of the case, from the necessity of the particular case. The constitution, Art. 8, section 24, declares that the county court shall, in all cases of contest, judge of the election of all county officers. This makes the county court the sole judge of such contests. The Constitution, Art. 4, section 11, says that the legislature shall prescribe the manner of determining contested elections, and in the Code of 1899, chapter 6, the legislature has given sole and exclusive jurisdiction to the county court to try contested elections for county offices, and it could not have committed it to other hands than the county court. The law makes no provisions for substituting another commissioner in place of an interested one, or for the transfer of the case to another tribunal, or any other mode of hearing when a commissioner is interested. If these commissioners did not act, then the contestant was denied justice, and that high and commanding, and I will add, sacred provision of the Constitution, Art. 3, section 17, would be violated, reading: 'The courts of this state shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay.' Those commissioners had to act from the very necessity of the case. Nobody else could act. That necessity constitutes an exception to the general rule that

a judge cannot act in his own case. 17 Am. & Eng. Ency. Law, (2d Ed.), 744." See also *Price* v. *Fitzpatrick*, 85 W. Va. 76, 100 S. E. 872.

As already indicated, the legality of an election involving the choice of public officers is cognizable in an election contest for which provision is made by statute in this State; and the rule is well established that courts of equity possess no inherent power to hear and determine contested elections which involve purely political questions. In 18 Am. Jur., Elections, Section 272, this statement appears: "It is a firmly established general rule that the jurisdiction of courts exercising general equity powers does not include election contests, unless it is so provided expressly or impliedly by organic or statute laws. The reason for this exclusion is that the questions involved are political and that the right to public office is not considered as constituting property in such sense as will warrent the intervention of equity to protect it." Section 326 in the same volume and title contains this language: "In considering the general powers of the courts, a distinction has been drawn between the jurisdiction of courts of equity and of law, based upon a distinction between political and civil rights. Since the right of suffrage is political, the accepted rule is that its assertion and protection are not properly matters for the cognizance of courts of equity. * * * If a public officer, charged with political administration, has disobeyed or threatens to disobey the mandate of the law, whether in respect of calling or conducting an election or otherwise, the party injured or threatened with injury in his political rights must seek his remedy in a court of law, and not in a court of chancery. However, if an illegal election affects property rights as well as rights of a political nature, equity will interfere; * * *". See *Cundiff* v. *Jeter*, 172 Va. 470, 2 S. E. 2d 436; *Sanders* v. *School Board of Prince William County*, 158 Va. 303, 163 S. E. 394. In *Mann* v. *County Court of Mercer County*, 58 W. Va. 651, 52 S. E. 776, this Court quoted with approval this statement in High on Injunctions, 4th Edition, Paragraph 1250: "A court of equity has no jurisdiction to in-

terfere in disputes concerning municipal elections, and when a court has assumed jurisdiction in such a case and has enjoined a board of municipal officers, such as the common council of a city, from canvassing the returns of a municipal election, which is made their duty by law, such injunction will be regarded as absolutely void for want of jurisdiction over the subject-matter." In this State equity has no jurisdiction in cases of contested elections. *Brown* v. *Randolph County Ct.*, 45 W. Va. 827, 32 S. E. 165.

The Circuit Court of McDowell County lacks jurisdiction either at law or in equity to hear and determine the legality of the election of June 8, 1949, in the first instance. The law does not confer upon a circuit court original jurisdiction of an election contest but only appellate jurisdiction which may be invoked in the manner provided by law. *Moore* v. *Holt,* 55 W. Va. 507, 47 S. E. 251; *State ex rel. Thompson* v. *McAllister,* 38 W. Va. 485, 18 S. E. 770, 24 L. R. A. 343. See *Martin* v. *White,* 74 W. Va. 628, 82 S. E. 505.

As the circuit court was without jurisdiction to entertain this suit, and as its action in sustaining the demurrer to the bill of complaint and in dismissing this suit was, for that reason, correct, the assignments of error which relate to other questions involved are not considered or discussed.

For the reasons stated the final decree of the circuit court is affirmed.                                          *Affirmed.*