STATE *el rel.* W. E. MORRISON, *et al.*

*v.*

ANDREW J. FREELAND

(No. 10631)

and

STATE *ex rel.* W. E. MORRISON, *et al.*

*v.*

FRED HARBERT

(No. 10632)

Submitted January 14, 1954. Decided February 26, 1954.

*John S. Stump, Jr., H. Laban White, Jr.,* for plaintiffs in error.

*Clifford, Jones & White, J. W. Maxwell,* for defendants in error.

GIVEN, PRESIDENT:

These proceedings were instituted in the Circuit Court of Harrison County upon informations in the nature of *quo warranto,* pursuant to the provisions of Code, 53-2-4. The circuit court sustained demurrers to the informations and, respondents having declined to amend, dismissed the proceedings. Questions involved upon the writs of error granted by this Court are identical and are considered together.

At the municipal election held for the City of Clarksburg on the third Tuesday in April, 1953, one of respondents, Andrew J. Freeland, was a candidate for the office of city councilman from the second ward and the other respondent, Fred Harbert. was a candidate for the office of city councilman from the fifth ward. The canvass of the election returns, made on April 24, 1953, about which there exists no dispute, established that respondents in their respective wards had received a majority of the votes cast for such offices. Certificates of election were duly issued, on May 4, 1953, and on that day respondents took and subscribed the required oath of office, and immediately attempted performance of the duties of their respective offices.

The relators are members of the city council of Clarksburg, and the basis of their contention, upon which they would try the right or title of respondents to the offices involved, rests upon the provision found in Section 12 of the charter of that city, enacted by the 1921 Legislature, which reads: "No person shall be elected or remain a member of the city council who does not reside in the ward from which he is elected and who is not a freeholder of record in the city of Clarksburg". Relators allege that respondents were not freeholders of record in the City of Clarksburg at the time of the election.

The first ground of the demurrers of respondents, the ground upon which the circuit court sustained the demurrers, relates to the right of relators to maintain these proceedings, the contention being that relators are not persons "interested" within the meaning of Code, 53-2-4, which, in so far as material, reads: "In any case in which a writ of quo warranto would lie, the attorney general or prosecuting attorney of any county, at his own instance or at the relation of any person interested, or any person interested, may, in the name of the State of West Virginia, apply to any such court or judge thereof in vacation as is mentioned in the second section of this article for leave to file an information in the nature of a writ of quo war-

ranto * * * But if the leave to file such information be asked on the relation of any person, or by any person at his own instance, the summons thereof shall not be issued by the clerk until such relator or person shall give the bond and security required by the next preceding section * * *".

It may be noticed that the statute contains no language attempting to ascribe to the word "interested" any special or limited meaning. It is a word of common use but of wide and varied meaning, as shown by Webster's definitions thereof. This Court, however, and we believe in accord with the great weight of authority of other jurisdictions having similar statutes, has limited the meaning thereof in some respects. In *State ex rel. Depue* v. *Matthews*, 44 W. Va. 372, 29 S. E. 994, it is held: "1. In a proceeding by way of an information in the nature of a writ of *quo warranto* against a person who is claimed to have intruded into or usurped the office of sheriff of a county, such proceeding must be at the relation of some person interested, otherwise than as a citizen and taxpayer, unless such proceeding is instituted at the instance of the ATTORNEY GENERAL or the prosecuting attorney of the county." This case is also authority for the proposition that a defeated candidate is not such an "interested person" within the meaning of the statute, where such defeated candidate has no claim to the office involved, such as the right to remain in office until a successor has been elected and qualified. In *State ex rel. Scanes* v. *Babb,* 124 W. Va. 428, 20 S. E. 2d 683, it is held that a *de facto* officer as such is not an "interested person" within the meaning of the statute. See *Bryant* v. *Logan.* 56 W. Va. 141, 49 S. E. 21.

It is contended that the decisions of this Court indicate that the "interest" required by the statute must be an interest in the office involved. We think, however, that the rule upon which the decisions rest, as indicated by the authorities cited therein, is that the Legislature could not have intended that an officeholder be subjected to litigation, as to his right or title to the office, at the hands of every citizen and taxpayer. This would not be in the public interest. It would not only tend to confuse and

delay the exercise of the rights and functions of those elected or appointed to office, but would probably prevent the seeking or acceptance of public offices by many capable persons. The interest which we believe is necessary to maintain such an action under our statute must be some substantial interest, special or peculiar to the relator, either in his individual or official capacity, an interest not possessed by members of the general public as mere citizens and taxpayers. Authorities of other jurisdictions where statutes are similar to our own are at great variance. See *Hammer* v. *Commonwealth ex rel. Hoover,* 169 Va. 355, 193 S. E. 496; *State ex rel. Gall* v. *Barnes,* 136 Minn. 438, 162 N. W. 513; *State ex rel. White* v. *Barker,* 116 Iowa 96, 89 N. W. 204, 57 L.R.A. 244; *Jones* v. *Riggs,* 154 N. C. 281, 70 S. E. 465; *Smith* v. *Reid,* 60 S. D. 311, 244 N. W. 353; *State ex rel. Murdock* v. *Ryan,* 41 Utah 327, 125 P. 666; *Vrooman* v. *Michie,* 69 Mich. 42, 36 N. W. 749; *People ex rel. Barton* v. *Londoner,* 13 Colo. 303, 22 P. 764, 6 L.R.A. 444; *People ex rel. Hiller* v. *Bevirt,* 297 Ill. App. 335, 17 N. E. 2d 629; *State ex rel. Pooser* v. *Wester,* 126 Fla. 49, 170 So. 736; 44 Am. Jur., Quo Warranto, Section 74. It will be noticed that a number of these cases decided under statutes similar to our own go so far as to hold that the interest of a citizen and taxpayer is sufficient to enable a relator to maintain a proceeding upon information in the nature of *quo warranto.*

The precise question to be determined here is whether members of a city council elected from certain wards have such an interest within the meaning of the statute to enable them to prosecute a proceeding in the nature of *quo warranto,* to have determined the right of another person to hold office as a member of that body from a different ward. We are cited no authority, and have found none, which seems directly in point. The charter of the City of Clarksburg provides for a city council of nine members. It also provides that five members thereof shall constitute a quorum, and that a majority vote of the members shall be necessary for the transaction of business, including the enactment of ordinances under which the

municipality will be operated. Thus it will be seen that the vote of any member may often determine the success or failure of any motion before that body. This being true, can it be said, by any process of reasoning, that each member of the council is not interested, as an individual and as an officer, in having only properly elected officers participate in the transaction of the business of that body? Is not such interest of such dignity as to make it the duty of each member, either as an individual or as a member of that body, to prevent illegal or unauthorized participation in the voting on the important issues which must be settled by that body? Is not the interest of each member, because of the duties imposed, and the privileges granted, different and far more substantial than the interest of a mere citizen and taxpayer? We think it must be held that each member of the council is possessed of such an "interest" as entitles him to prosecute such an action. We think it can not be argued with much force that one in such position has no interest in seeing that the business of the council is not controlled by a mere usurper of office. To so construe the statute does not unduly extend or broaden the field of potential relators in such proceedings as to make possible undue harassment of those willing to accept office. It is more likely to cause only those who are in fact qualified to hold office to seek office. To hold otherwise would so limit the use of the proceeding as to render it practically useless.

In 44 Am. Jur., Quo Warranto, Section 76, we find this statement: "Where quo warranto is an available remedy to test the right to act as a director or other officer of a private corporation or association, the proceedings may be brought upon the relation of anyone having the necessary interest, such as a director, a trustee, or a stockholder." The interest of a member of a city council would, it seems to us, be as substantial as that of a director of a private corporation, considered either from an individual or a public viewpoint. Undoubtedly, the Legislature, in making available a remedy upon an information in the nature of *quo warranto,* in addition to the statutory remedy of *quo warranto* provided by Code, 53-2-1, intended

to create a more liberal method of determining the right or title to an office rather than to restrict such procedure. Although not controlling, we think it of some significance that the Legislature, in the creation of the method for removal of municipal officers disqualified from holding such offices, whether disqualification arose before or after induction into office, specifically provided by Code, 6-6-7, that proceedings may be presecuted by "any other officer of the municipality". If "any other officer" may maintain the proceeding in the one case, is there any sound reason for preventing him from doing so in a different proceeding prosecuted for the identical purpose?

Another ground of the demurrer is based on the contention that the informations are fatally defective, for the reason they do not allege that respondents were not freeholders of record in the City of Clarksburg at the time of the institution of these actions, the theory on which the contention is based being that respondents are entitled to hold their respective offices notwithstanding they were not freeholders at the time of their election if they had become such freeholders at the time of the institution of the actions. It may be noticed that the provision of Section 12 of the charter, quoted above, provides that no person shall be "elected" who is not a freeholder. The freeholder requirement has been held to be constitutional. See *McMillin* v. *Neeley,* 66 W. Va. 496, 66 S. E. 635; *Kahle* v. *Peters,* 64 W. Va. 400, 62 S. E. 691; *State ex rel. Thompson* v. *McAllister,* 38 W. Va. 485, 18 S. E. 770. In *Daugherty* v. *Town of Mabscott,* 131 W. Va. 500, 48 S. E. 2d 342, this Court held: "2. Under the provisions of Code, 8-3-11, a municipal officer is to be regarded as elected when the returns of the election have been duly canvassed to that effect and the result declared by order of the body authorized by law to do so, and not before."

In *Dryden* v. *Swinburne,* 20 W. Va. 89, the person receiving the majority vote for the office involved was an alien and ineligible to hold the office. The Court, in its opinion, stated at page 137: "It follows, therefore, as the

plurality of votes in this election were cast for Thomas Swinburne, and he was ineligible, because he was an alien, that the election must be held to be a failure, and the office of clerk of the circuit court of Kanawha declared vacant * * *".

In the recent case of *Slater* v. *Varney,* 136 W. Va., 406, 68 S. E. 2d 757, this Court, after discussing the *Dryden* and other cases, as related to the question here involved, stated: "* * * Though the constitutional and statutory provisions dealt with in those cases related to the election or the nomination of the contestee, the difference between disqualification to be elected to or nominated for an office and the constitutional disqualification here involved of the contestee to hold an office until he accounts for and pays the public moneys which were collected by him, though apparent, is not controlling so long as the disqualification continues to exist. The election or the appointment of a person to public office is merely the means provided by law by which such person is enabled to obtain and discharge the duties of the office and it is manifest that an election to an office of a person who, by reason of a permanent disqualification or ineligibility, cannot legally hold or occupy the office is not a valid election. This is necessarily so. It would be absurd to say that a person who receives the highest number of votes for an office voted for at an election, but who cannot legally hold or occupy such office is or can be legally elected to the office merely because he received the greatest number of votes. That a valid election to a public office impliedly contemplates and embraces the right to hold the office is indicated by the decision of this court in Dryden v. Swinburne, 20 W. Va. 89 * * *".

We think the rule deducible from the authorities cited is clearly stated in 67 C. J. S., Officers, Section 26: "Where the legislature has fixed the qualifications for an office pursuant to its authority so to do, the electors may not select one not possessing the qualifications prescribed, and one who is not eligible is not regraded as elected to office,

although he may receive the highest number of votes cast and is in possession of a certificate of election, although it has been held that his election is not affected but merely his right to hold the office. One who has been elected to an office, but who is ineligible, cannot recover the office from another."

It being clear that the freehold requirement of the statute under consideration prohibited the "election" to the offices involved, it was unnecessary for the relators to allege that respondents were not freeholders at any time subsequent to the ascertainment of the results of the election. As to respondents, the election was a nullity.

We have not failed to consider the contention that respondents may have qualified as freeholders between the time of the ascertainment of the results of the election and the time for the taking and subscribing of the oath of office, thereby making themselves qualified to hold the office at the commencement of their respective terms. That right, however, is clearly denied by the statute. It may be, and probably is, true that respondents could have become freeholders before the time for the taking of the oath, but it is just as true that other persons similarly elected probably would not be able to so qualify. One of the purposes of the Legislature in requiring the qualification to exist at the time of "election", and not at some later time, no doubt, was to prevent abortive elections, as in this very case. The purpose would not necessarily be attained in many cases if the opportunity for qualification was left open after election.

Another contention of respondents, raised by their demurrers, relates to the failure of relators to allege that respondents, at the time of their election, were not honorably discharged veterans of World War II, or that they were such veterans but had been discharged from service more than two years prior to the date of the election. Chapter 120 of the Acts of the 1947 Legislature provides, in effect, that the eligibility of veterans of World War II to hold office in any municipality for two years

after honorable discharge from service "shall not be affected or impaired by reason of his not having been assessed with or paid taxes." The question attempted to be raised can not be considered on demurrer. It is in reality an affirmative defense to be established by respondents. It is nowhere made a condition to the right of relators to prosecute an action upon an information in the nature of *quo warranto.*

Respondents further contend that the circuit court was without original jurisdiction of these proceedings for the reason that the city council of Clarksburg was vested with exclusive original jurisdiction to judge of the qualifications and eligibility of its own members. They rely on cases like *Evans* v. *Charles,* 133 W. Va. 463, 56 S. E. 2d 880; *Price* v. *Fitzpatrick,* 85 W. Va. 76, 100 S. E. 872; *Martin* v. *White,* 74 W. Va. 628, 82 S. E. 505; *State ex rel. Thompson* v. *McAllister,* 38 W. Va. 485, 18 S. E. 770. In the *Evans* case it was held that "The jurisdiction of the common council of a municipality * * * to hear and decide a contested election involving the selection of municipal officers is original and exclusive", and that "A court of equity does not have inherent jurisdiction of a suit to determine the legality of an election involving the selection of officers of a municipality". In the *Price* case a contest of an election was determined by action of a tribunal attempted to be created by the old city council. The procedure was removed to the circuit court upon certiorari, where it was tried *de novo.* This Court held that the new council was the proper forum to try the contest. Therefore, the action of the old council being void, the circuit court was without jurisdiction upon certiorari. In the *Martin* case plaintiffs attempted to have action of a city council reviewed by the circuit court upon mandamus. This Court stated that "Mandamus will not be allowed to usurp the function of appellate process. It can never be employed in the absence of statute for the correction of errors of inferior tribunals acting judicially". In the *McAllister* case the holding is: "2. *Certiorari* and not *mandamus,* is the proper remedy to review the proceed-

ings of a municipal council, under section 23 of chapter 47 of the Code." Nothing in either of these cases, it appears to us, tends to support the position of respondents. Nowhere is it indicated that circuit courts can not exercise original jurisdiction of proceedings upon informations in the nature of *quo warranto*. The statutes seem to make any extended consideration of the question unnecessary. Code, 53-2-2, specifically requires that a petition in *quo warranto* be presented "to the circuit court, or the judge thereof in vacation". The section governing a proceeding upon information in the nature of *quo warranto,* Code, 53-2-4, requires that the information be presented "to any such court or judge thereof in vacation as is mentioned in the second section of this article * * *".

What has been said, we think, sufficiently answers other questions raised by the demurrers of respondents, and requires that the judgment of the Circuit Court of Harrison County, in each proceeding, be reversed, and the proceedings remanded to that court.

> *Judgments reversed;*
> *proceedings remanded.*

HAYMOND, JUDGE, dissenting:

I respectfully but emphatically dissent from the holding of the majority as expressed in point 1 of the syllabus in these cases. In my opinion the legal proposition there enunciated is manifestly unsound in principle and is completely unsupported by any applicable convincing text or case authority.

Though the precise question whether a public officer who is a member of a municipal council or other administrative board or tribunal composed of several members, all of whom are public officers but each of whom holds or occupies a separate public office, may, as a person interested, under Section 4, Article 2, Chapter 53, Code, 1931, maintain a proceeding by an information in the nature of a writ of quo warranto to determine the right of another member, holding a separate and distinct office, to hold

or occupy such office, has not been previously decided by this Court, the reasoning advanced and the language used in its prior decisions relating to an information in the nature of a writ of quo warranto is in direct conflict with the principle stated in the foregoing point of the syllabus.

In *State ex rel. Depue* v. *Matthews,* 44 W. Va. 372, 29 S. E. 994, cited in the majority opinion, the petitioner, a defeated candidate, as an interested person under the statute which was incorporated in an earlier code as Section 9 of Chapter 109, sought to maintain a proceeding by an information in the nature of a writ of quo warranto to remove from the office of sheriff the opposing candidate who had been elected to that office. This Court held in points 1 and 2 of the syllabus, that "In a proceeding by way of information in the nature of a writ of *quo warranto* against a person who is claimed to have intruded into or usurped the office of sheriff of a county, such proceeding must be at the relation of some person interested, otherwise than as a citizen and taxpayer, unless such proceeding is instituted at the instance of the Attorney general or the prosecuting attorney of the county.", and that "Where two parties are opposing candidates for the office of sheriff, and the one receiving the highest number of votes for the office disqualifies himself from holding the same by contracting to farm or sell the office or a portion thereof, such fact does not confer *any interest in the office* on the party receiving the minority of the votes cast at the election." (Emphasis supplied). The opinion in that case indicates clearly that the interest of a person entitled to maintain such proceeding must be a peculiar or special private interest, different from that of a citizen and taxpayer or of the public in general, and that such interest must be an interest in the office itself. This is manifest from this statement. "The relator, in his petition, does not assert *any claim to the office of sheriff, or interest in the office,* but does state that he was candidate, and that W. B. Matthews was the opposing candidate, and received a majority of the votes cast at the election, and was declared elected. The petition claims and seeks to show that said Matthews was disqualified from holding said

office by reason of the fact that he had farmed or sold a portion of the office; but, whatever might have been the disqualification of said Matthews which rendered him ineligible, such disqualification in no manner inured to the benefit of the relator, and conferred *no interest in the office* upon him. This point was decided by this Court in the case of *Dryden* v. *Swinburne,* 20 W. Va. 91, (ninth point of syllabus), where it was held that 'if an alien and a citizen eligible to office are candidates for the same, and the alien receives a majority of the votes cast at the election, though such alien be declared ineligible to the office upon a contest between them, the citizen who receives a minority of the votes cast cannot be declared entitled to the office, but it must be held to be vacant.' Under this decision, the question as to whether Matthews had by his action forfeited his right to hold the office of sheriff would be immaterial so far as Depue was concerned, for the reason that it would confer *no interest in the office* upon him.". (Emphasis supplied).

In *State ex rel. Scanes* v. *Babb,* 124 W. Va. 428, 20 S. E. 2d 683, in which the relator, who had been appointed to the Clarksburg Water Board by the necessary vote of a de facto member, sought to establish his right to that office in a proceeding by an information in the nature of a writ of quo warranto against a respondent also occupying the office under color of right, was held not to be a person interested within the meaning of the statute and the judgment of the circuit court in sustaining a demurrer to the information and dismissing the proceeding was affirmed. In the opinion, with reference to the status of the relator, this Court said: "As we have said, he is not a de jure officer and, under the authorities which we have just cited, if the allegations of the information are taken as true, and on a demurrer they must be so taken, he is not a de facto officer. Does he then have such *interest in the office* in question that he can maintain this information? Certainly not. If he is not a de jure or de facto officer, his interest does not rise higher than that of the relator in the case of *State ex rel. Depue* v. *Matthews,*

*supra,* and *Newman* v. *United States ex rel. Frizzell, supra,* and therefore is not an interested party within the meaning of Code, 53-2-4." ˙ (Emphasis supplied).

In *Slater* v. *Varney,* 136 W. Va. 406, 68 S. E. 2d 757, an election contest instituted by a defeated candidate challenging the eligibility of the elected opposing candidate to hold the office of circuit clerk of Mingo County, in discussing and denying the contention of the contestee that an information in the nature of a writ of quo warranto was the proper remedy to be invoked by the contestant instead of an election contest, this Court used this language: "As the contestant is not an interested person, and *has no right to the office,* he can not resort to an information in the nature of a writ of quo warranto, which can not be maintained by a person who has been defeated in the election at which he was a candidate. Section 4, Article 2, Chapter 53, Code, 1931; *State ex rel. Depue* v. *Matthews,* 44 W. Va. 372, 29 S. E. 994." (Emphasis supplied).

In *Newman* v. *United States of America ex rel. Frizzell,* 238 U. S. 537, 35 S. Ct. 881, 59 L. Ed. 1446, the relator, a citizen and taxpayer of the District of Columbia instituted, by leave of court, in the Supreme Court of the District, a proceeding in quo warranto for the purpose of ousting the respondent from the office of civil commissioner to which he had been appointed by the President of the United States. An Act of Congress relating to a proceeding in quo warranto provided in part that "The Attorney General or the district attorney may institute such proceeding on his own motion, or on the relation of a third party.", and that: "If the Attorney General and the District Attorney shall refuse to institute such proceedings on the request of a person interested, such person may apply to the court by verified petition for leave to have said writ issued; and if in the opinion of the court the reasons set forth in said petition are sufficient in law, the said writ shall be allowed to be issued by any attorney, in the name of the United States, on the relation of said interested person, on his compliance with the condition prescribed in the last section as to security for costs."

The Supreme Court of the United States held that a citizen and taxpayer who makes no claim to the office was not authorized by the act, as a "person interested," to apply to the court, upon the refusal of the Attorney General and the district attorney to act, for leave to have a writ of quo warranto issued against the usurper of any office, civil or military, in the District of Columbia.

In the opinion in the *Newman* case, discussing the requisite interest of a private citizen to maintain such proceeding, the court said: "Considering the ancient policy of the law and the restrictions imposed by the Code, it is evident that in passing this statute Congress used the words 'third person' in the sense of 'any person' and the phrase 'person interested' in the sense in which it so often occurs in the law—prohibiting a judge from presiding in a case in which he is interested; preventing a juror from sitting in a case in which he is interested; and permitting interested persons to institute *quo warranto* proceedings. In the illustrations suggested, the interest which a judge has as a member of the public would not disqualify him from sitting in a case of great public importance and in which the community at large was concerned. The interest which disqualifies a juror from serving, as well as the interest which would authorize this plaintiff to sue, must be *some personal and direct interest in the subject of the litigation.* The same definition has often been given in *quo warranto* cases. The interest which will justify such a proceeding by a private individual must be more than that of another taxpayer. *It must be 'an interest in the office itself and must be peculiar to the applicant.'* *Demarest* v. *Wickham,* 63 N. Y. 320; *Commonwealth* v. *Cluley,* 56 Pa. St. 270; *State* v. *Taylor,* 208 Missouri, 442; *Robinson* v. *Jones,* 14 Florida, 256; *In re Stein,* 39 Nebraska, 539; *State ex rel. Depue* v. *Matthews,* 44 W. Va. 372, 384; *Com. ex rel. Butterfield* v. *McCarter,* 98 Pa. St. 607; *State* v. *Boal,* 46 Missouri, 528; *Brown* v. *Alderman,* 82 Vermont, 529; *Mills* v. *Smith,* 2 Washington, 572; *Antrim* v. *Reardan,* 161 Indiana, 250; *Harrison* v. *Greaves,* 59 Mississippi, 455; *Andrews* v. *State,* 69 Mississippi, 740 (3), 746; *Toncray* v. *Budge,* 14 Idaho, 639; *Hudson* v. *Conklin,* 73

Kansas, 764; *Vrooman* v. *Michie*, 69 Michigan, 47; *Dakota* v. *Hauxhurst*, 3 Dakota, 205." (Emphasis supplied).

In a previous passage in the same opinion, the court also used this pertinent language: "In a sense—in a very important sense—every citizen and every taxpayer is interested in the enforcement of law, in the administration of law, and in having only qualified officers execute the law. But that general interest is not a private but a public interest. Being such, it is to be represented by the Attorney General or the District Attorney who are expected by themselves or those they authorize to institute *quo warranto* proceedings against usurpers in the same way that they are expected to institute proceedings against any other violator of the law. That general public interest is not sufficient to authorize a private citizen to institute such proceedings; for if it was, then every citizen and every taxpayer would have the same interest and the same right to institute such proceedings and a public officer might, from the beginning to the end of his term, be harassed with proceedings to try his title."

It is manifest, from the holdings and the statements of this Court in the cited cases of *State ex rel. Depue* v. *Matthews, State ex rel. Scanes* v. *Babb,* and *Slater* v. *Varney,* and the holding and the quoted passages in the *Newman* case, that the interest of a private citizen or a public officer, other than the Attorney General, the district attorney, or the prosecuting attorney, to entitle him to maintain an information in the nature of a writ of quo warranto must be a personal, peculiar, and direct interest as distinguished from a general or public interest in the subject of the litigation, and that this Court and the Supreme Court of the United States in respectively considering and deciding the cases just cited had in mind and were speaking of an interest by the relator, in an information in the nature of a writ of quo warranto, in the office involved in such proceeding instead of an interest in the manner in which the duties of the office are performed or conducted or in the qualification of the officer to hold the office. The one is a personal, peculiar, or direct interest of a private citizen or a public official, other than the At-

torney General or the prosecuting attorney, to maintain the proceeding; the other is a general or public interest, common to citizens, taxpayers, and public officials alike, to establish and enforce the requirement that a public office be properly conducted by a qualified public officer; and in safeguarding and promoting this common interest the Attorney General or the prosecuting attorney is the representative of the general public in the institution and the prosecution of such proceeding.

The fundamental error in the principle expressed in point 1 of the syllabus and the intolerable consequences likely to emanate from it stem from the failure or the refusal of the majority to differentiate between a personal, private or peculiar interest, in a particular public office, of a private citizen or a public officer, and the general interest of the public, including citizens, taxpayers and public officials alike, in the manner in which the office is administered or conducted and in the selection of qualified persons to hold public office.

I assume that it can not be seriously contended that any of the relators in each of these proceedings could legally be elected to or could hold or occupy the office of councilman which either respondent now claims or presently occupies. Section 7 of the charter of the City of Clarksburg provides that the council shall be composed of nine members, one such member to be elected from and to be a resident in each ward of the city; and under the charter no councilman from one ward can claim or hold or occupy the office of councilman from any other ward of the city. For that reason none of the relators has any claim to or interest in the office of councilman from the ward from which either respondent, according to the election returns, was elected at the municipal election in April, 1953, and none of them satisfies or complies with the essential requirement indicated in the cases of *State ex rel. Depue* v. *Matthews,* 44 W. Va. 372, 29 S. E. 994; *State ex rel. Scanes* v. *Babb,* 124 W. Va. 428, 20 S. E. 2d 683; and *Newman* v. *United States of America ex rel. Frizzell,* 238 U. S. 537, 35 S. Ct. 881, 59 L. Ed. 1446, that a relator, other than the

officers mentioned in the statutes, to maintain an information in the nature of a writ of quo warranto, under Code, 1931, 53-2-4, or a quo warranto proceeding under the Act of Congress considered in the *Newman* case, to oust a person from a particular public office, must have an interest in the office itself.

The holding in point 1 of the syllabus is contrary to the weight of authority as established by the decisions in other jurisdictions under statutes substantially similar to the statutes of this State relating to a writ of quo warranto, Code, 1931, 53-2-1, 2, and 3, and an information in the nature of a writ of quo warranto, Code, 1931, 53-2-4.

In the leading case of *Mills* v. *The State of Washington ex rel. Smith, Mayor,* 2 Wash. 566, 27 P. 560, the Mayor of the City of Vancouver, in his official capacity, instituted a proceeding by information in quo warranto to oust the respondent from the office of councilman of the city to which he was appointed and in which he was confirmed by the council upon the nomination of a mayor *pro tem* in the absence from the meeting of the mayor who, if present, was authorized to make the nomination. The statute provided in part that the information may be filed by the prosecuting attorney upon his own relation, whenever he shall deem it his duty to do so, or by any other person, on his own relation, whenever he claims an interest in the office, franchise or corporation which is the subject of the information. The Supreme Court of Washington held that the mayor of a city did not have such an interest in the office of city councilman as entitled him to maintain, on his own relation, an information in the nature of a writ of quo warranto to oust an alleged usurper of such office; that the usurpation affected the public generally; and that the remedy was by a proceeding on the part of the state. In the opinion the Court said: "It is difficult to see what interest the mayor has in the office of a city councilman that any other citizen has not. He is interested in the rightful administration of the laws, but so is every other citizen. If he be a taxpayer he is interested in an economical administration, but so is every other taxpayer in the city."

The language just quoted is applicable to the interest of the relators in the instant proceedings. As members of the council they are interested, not in the office claimed by either respondent, but in the proper performance of the duties of that office, in the manner in which it is conducted, and in a fair, competent and impartial administration of the city government; but so is every citizen, every taxpayer and every member of the general public within the city; and such interest is not the kind of interest which enables a private person or a public official, other than the Attorney General or the prosecuting attorney, to maintain, as a "person interested", an information in the nature of a writ of quo warranto within the meaning of the statute. Though the interest of a member of the council in the manner in which another member performs the duties and conducts the affairs of his office may be less remote than that of the citizen, the taxpayer, and the members of the general public because of his participation in the administration of the government of the municipality, the interest of each is shared and possessed by all of them in common as members of the general public. The only difference in this general interest of a councilman, a citizen, a taxpayer, and a member of the general public, is a difference in degree and not a difference in kind.

In the Illinois case of *People ex rel. Hiller* v. *Bevirt,* 297 Ill. App. 335, 17 N. E. 2d 629, two separate petitions for leave to file and prosecute a complaint in quo warranto were filed in the circuit court under a statute which provided that any citizen "having an interest in the question, on his own relation" may file a complaint in quo warranto, if the state's attorney or the attorney general fails or refuses, and the court grants leave, to file such complaint. The prayer of the petitions was denied by the trial court and on review by the Appellate Court of the Fourth District of Illinois the cases were consolidated and heard together. Both plaintiffs were citizens, residents and legal voters of a certain township. One plaintiff was also the clerk of the township and the other plaintiff was a justice of the peace and, by virtue of that office, a member of the

township board of auditors. Each plaintiff sought to oust the defendant from the office of supervisor of the township for alleged misconduct and misfeasance in office which, the plaintiffs charged, prevented them from performing the duties of their respective offices of town clerk and member of the board of town auditors. The appellate court held that neither plaintiff had such an interest in the alleged usurpation of the office of town supervisor by the defendant as would entitle a plaintiff to maintain an information in the nature of a writ of quo warranto to oust the defendant from that office, and affirmed the action of the trial court in denying the prayer of each petition.

In the opinion the court pointed out the distinction between the personal and peculiar interest required of a person to enable him to maintain a complaint in quo warranto on his own relation and the interest possessed by him in common with other members of the general public, and emphasized the intolerable consequences which would result to public officials if the proceeding could be maintaned by a citizen, a taxpayer, or other public official, whose only interest in the proceeding was an interest possessed by him in common with the general public. In discussing these questions the court used this presently pertinent and applicable language:

"Under the allegation of plaintiffs' petitions and complaints their interests may be grouped in two classifications. First, as citizens and residents of the township they have an interest in having the office of supervisor filled by one who has been duly elected and has qualified by filing the bond required by statute. If the misfeasance and misconduct alleged in the petitions, complaints and affidavits amount to a forfeiture of the rights to hold the office, upon which we express no opinion, the plaintiffs are interested as citizens and residents of the township in having the office filled by one who will properly perform his official duties. The interest which plaintiffs have as citizens and residents of the township is not peculiar to them but is common to every citizen and resident of the

township. If such interest was sufficient to entitle the plaintiffs to be granted leave to file a complaint in quo warranto then it would follow that every citizen and resident of the township would have an equal right to the use of the writ. In view of the restrictions that were placed upon the right of the individual, both at common law and by previous legislative enactments, we do not believe it was the intent of the legislature in the enactment of Section 10 to lay in the hand of every citizen and resident the right to file and prosecute a quo warranto proceeding against a public official. The interest that a citizen and resident must have before he be granted such leave must be an interest personal to him and it must be peculiar to him and not one that is possessed by the public. This construction is supported by the reasoning of the Supreme Court in *People* v. *Fullenwider,* [329 Ill. 65, 160 N. E. 175] * * * and by cases in other jurisdictions. *Newman* v. *United States,* 238 U. S. 537; *State* v. *Matthews,* 44 W. Va. 372; *Commonwealth* v. *McCarter,* 98 Pa. 607; *Mills* v. *State,* 2 Wash. 566, 27 P. 560.

"The other classification of plaintiffs' interest would be that interest they have as public officials of the township in having one hold the office of supervisor that will perform his duties that they may properly perform theirs. It is apparent that such interest attaches only to the performance of the duties of the office. If the defendant has failed to perform the duties of the office and such failure amounts to statutory grounds for forfeiture and he was ousted by reason of such failure then plaintiffs' interest as township officials terminates when he is ousted. Under this classification of interest the office of supervisor might be occupied by an usurper yet if he performed the duties of the office in such a way that plaintiffs could perform their official duties then plaintiffs would have no interest. *The interest must be in the office itself and not merely in the performance of the duties of the office.* If plaintiffs' theory, that their interest as public officials is sufficient to entitle them to file a complaint in quo warranto, was adopted it would make it possible for one public official

to test the efficiency of another official by a quo warranto proceeding. Such a construction would open the way to innumerable actions by one public official against another and would be extending the use of the quo warranto proceeding beyond the scope intended by the legislature."

The interest of the plaintiffs in *People ex rel. Hiller* v. *Bevirt,* 297 Ill. App. 335, 17 N. E. 2d 629, as indicated by the foregoing quotations from the opinion in that case, is legally identical with the interest possessed by the relators in the instant proceeding. Their interest as members of the council of the City of Clarksburg is not an interest in the office of any other member of the council but is an interest "merely in the performance of the duties of the office." It is not an interest personal and peculiar to them but is an interest that is possessed by citizens, taxpayers, public officials and members of the general public alike and is clearly not such an interest as entitles a relator to maintain an information in the nature of a writ of quo warranto within the meaning of the applicable statute of this State.

That the interest of the relators is an interest which they share and possess in common with the general public, though it may affect them in greater degree than it does the public generally, is made clear, by the labored effort of the majority to show that it is an interest different from that of the members of the general public, in this passage in the majority opinion: "The charter of the City of Clarksburg provides for a city council of nine members. It also provides that five members thereof shall constitute a quorum, and that a majority vote of the members shall be necessary for the transaction of business, including the enactment of ordinances under which the municipality will be operated. Thus it will be seen that the vote of any member may often determine the success or failure of any motion before that body. This being true, can it be said, by any process of reasoning, that each member of the council is not interested, as an individual and as an officer, in having only properly elected officers participate

in the transaction of the business of that body?. Is not such interest of such dignity as to make it the duty of each member, either as an individual or as a member of that body, to prevent illegal or unauthorized participation in the voting on the important issues which must be settled by that body? Is not the interest of each member, because of the duties imposed, and the privileges granted, different and far more substantial than the interest of a mere citizen and taxpayer? We think it must be held that each member of the council is possessed of such an 'interest' as entitles him to prosecute such an action. We think it can not be argued with much force that one in such position has no interest in seeing that the business of the council is not controlled by a mere usurper of office. To so construe the statute does not unduly extend or broaden the field of potential relators in such proceedings as to make possible undue harassment of those willing to accept office. It is more likely to cause only those who are in fact qualified to hold office to seek office. To hold otherwise would so limit the use of the proceeding as to render it practically useless."

Despite the statements to the contrary in the foregoing quotation, the effect of the holding that the relators are entitled to maintain these proceedings is that any public official, citizen, taxpayer or member of the public generally, who claims no right or title to an office held by any other public official may, contrary to the holding of this Court in State ex rel. Depue v. Matthews, 44 W. Va. 372, 29 S. E. 994, and State ex rel. Scanes v. Babb, 124 W. Va. 428, 20 S. E. 2d 683, maintain an information in the nature of a writ of quo warranto to oust any public official from office when any such member of the general public is dissatisfied with the manner in which such official performs or discharges the duties of his office. The effect of such holding is also to broaden the scope of the statute, to render unnecessary any proceeding in behalf of the public by the Attorney General or the prosecuting attorney, and to emasculate the statute by removing the clearly recognized limits to the scope of its operation which until

now have existed in this State and which still exist in most other jurisdictions.

Although the manifest purpose of the majority in employing the above quoted language is to discover a personal, peculiar and direct interest of the relators in the office of councilman presently occupied by each of the respondents instead of an interest possessed by the relators in common with every citizen, taxpayer, public officer and member of the general public of the municipality, the language used in the majority opinion clearly and distinctly shows that the interest of the relators is merely an interest which they possess in common with the members of the general public of the municipality who are also interested in the manner in which the respondents vote and discharge the duties of their respective offices and in their qualifications to hold such offices. The interest of the relators, as delineated in the foregoing quotation from the majority opinion, is a public interest identical in character with the interest of the plaintiffs as described in portions of the opinions in the cases of *Newman* v. *United States of America ex rel. Frizzell*, 238 U. S. 537, 35 S. Ct. 881, 59 L. Ed. 1446; *Mills* v. *The State of Washington ex rel. Smith, Mayor*, 2 Wash. 566, 27 P. 560; and *People ex rel. Hiller* v. *Bevirt*, 297 Ill. App. 335, 17 N. E. 2d 629, heretofore quoted in this opinion; and in each of the cases just cited an interest of that nature was held to be not such an interest as entitled the relator to maintain an information in the nature of a writ of quo warranto.

In support of its conclusion that the relators may maintain these proceedings the majority invokes this quotation from 44 Am. Jur., Quo Warranto, Section 76: "Where quo warranto is an available remedy to test the right to act as a director or other officer of a private corporation or association, the proceedings may be brought upon the relation of anyone having the necessary interest, such as another director, a trustee, or a stockholder." The quoted principle of law has no present application. A stockholder, a director who is also a stockholder, and a trustee of a

private corporation has a personal or peculiar property right or interest in the corporation which would of course enable him to invoke the remedy of an information in the nature of a writ of quo warranto to test the right of a person to act as a director or other officer of such private corporation; but that principle manifestly does not apply to a public office. A public office is not property, within the meaning of the constitutional provision that "no person shall be deprived of life, liberty or property without due process of law and the judgment of his peers."; and an incumbent of a public office has no vested right in such office. *Hockman v. Tucker County Court,* 138 W. Va. 132, 75 S. E. 2d 82.

The difference between the personal and peculiar property interest of a director, a trustee, or a stockholder, in a private corporation and the interest of any person, whether he be a public officer, a citizen, a taxpayer or a member of the general public, in a public office is so conspicuous and substantial that any attempted analogy between such interests with respect to the right of any member of either group to maintain an information in the nature of a writ of quo warranto is utterly lacking in pertinency, force, and effect, and lends no support to the decision of the majority in sustaining the right of the relators to maintain these proceedings.

I emphatically disagree with the statement in the majority opinion to the effect that, as the Legislature in enacting Section 7, Article 6, Chapter 6, Code, 1931, established a separate remedy for the removal of disqualified municipal officers before or after their induction to office, and authorized "any other officer" to maintain the proceeding created by that statute, there is no sufficient reason for denying such officer the right to maintain an information in the nature of a writ of quo warranto to accomplish the same result. It by no means follows that a person who is not entitled to invoke the intentionally restricted remedy of an information in the nature of a writ of quo warranto may invoke that remedy because

by a separate statute he is given a different remedy by which he may obtain the same relief. Any such contention is not only legally unsound but is surprisingly novel and naive. It is just as logical to say that a person who has no right to a mandatory injunction but who, in mandamus may accomplish substantially the same result, may, for that reason, obtain a mandatory injunction in a suit in equity. On the contrary a person who may not invoke a remedy provided by one statute but who has a right to proceed under another statute is generally restricted to the remedy provided by the available statute and precluded from proceeding in any other manner. "It is an established principle, that if a statute creating a new right or cause of action where none existed before, also provides an adequate remedy for the enforcement of the right created, and the statutory remedy is not by its terms cumulative, the remedy thus prescribed is exclusive. In such case, such remedy must be pursued in the enforcement of the right to the exclusion of any other remedy." 50 Am. Jur., Statutes, Section 596.

If the Legislature, in enacting Section 7, Article 6, Chapter 6, Code, 1931, which provides for the removal from office, by the circuit court, of any persons holding certain county, magisterial district, independent school district, and municipal offices, upon designated grounds and for enumerated causes, and authorizes the county court in connection with county offices or designated officers, or five or more voters, in connection with county, district or municipal offices, to maintain a proceeding for that purpose, had intended to permit the county court or the designated officers, or five or more voters, to maintain an information in the nature of a writ of quo warranto, it would have amended or changed the statute relating to that proceeding in the manner and to the extent necessary to effectuate that result. That it has not done so clearly signifies its lack of any such intention.

By enacting Section 7, Article 6, Chapter 6, Code, 1931, the Legislature merely intended to provide a more com-

prehensive method of removing certain public officers and to extend the remedy created by that statute for the removal of such officers to persons and cases which were not within or covered by the more restricted remedy provided by the statutes governing quo warranto and an information in the nature of a writ of quo warranto. In passing Section 7, Article 6, Chapter 6, Code, 1931, it did not intend to broaden or extend, or in any way affect, the restricted scope of an information in the nature of a writ of quo warranto; and in enacting Section 4, Article 2, Chapter 53, Code, 1931, and in continuing in that section since the year 1882 the provision that any person interested may, by leave of the court, maintain an information in the nature of a writ of quo warranto, it did not intend to permit any person, whose interest is merely an interest in the manner in which a public office is conducted or its duties are performed and which is possessed by such person in common with citizens, taxpayers, public officers, and members of the general public, to prosecute an information in the nature of a writ of quo warranto to oust from his office a public officer. By the use of the words "person interested" the Legislature intended that they should have and be given the meaning, long attributed to them in this jurisdiction and in other jurisdictions whose decisions constitute the weight of judicial authority, that the interest of such person must be a personal, peculiar and direct interest in the office itself and not an interest in the manner in which its duties are performed or in the qualifications of its incumbent which is possessed by such person in common with citizens, taxpayers, public officers and members of the general public.

By the principle enunciated in point 1 of the syllabus, any member or members, singly or collectively, of a court, a board, a commission, a municipal council or other public tribunal composed of two or more members, who questions the qualifications of any of his associates to hold his

office or who is dissatisfied with the manner in which his associate acts, votes, or performs the duties of his office, or even an employee who has a pecuniary interest in retaining his employment, may, as a "person interested", successively seek the removal of such officer by an information in the nature of a writ of quo warranto, in disregard of the legislative intent in the enactment of the statute governing such proceeding, to the detriment of the public interest, and to the impairment of the right of every such officer to hold and occupy a public office. The statutory provisions which require the relator in an information in the nature of a writ of quo warranto to obtain leave of the court and to give security for costs, though affording some protection, are not a complete safeguard against a relator who institutes such a proceeding in bad faith. For these reasons I would preclude any possibility of subjecting any such incumbent of a public office to a multiplicity of such proceedings by requiring an interest by the relator, as a person interested, in the office itself, as clearly required by the above cited cases, instead of an interest in the manner in which its duties are performed by the occupant or in his qualifications to hold the office, to entitle such relator to maintain an information in the nature of a writ of quo warranto.

I am fearful of the intolerable consequences which may result from the holding in point 1 of the syllabus and my apprehension of their future occurrence impels me to register this dissent.

I accept as correct the principles stated in points 2, 3 and 4 of the syllabus; but, as in my opinion the relators are not entitled to maintain an information in the nature of a writ of quo warranto, those principles can not be applied or enforced in these proceedings.

For the reasons stated I would deny the motion of the relators to reverse and would affirm the judgment of dismissal rendered by the circuit court in each proceeding.

I am authorized to say that Judge Browning concurs in the views expressed in this dissent.