STATE OF WEST VIRGINIA *ex rel.*
CHARLES A. SCHENERLEIN

*v.*

THE CITY OF WHEELING, A MUNICIPAL CORPORATION, AND
AUGUST L. DAILER, CITY CLERK OF SAID
CITY OF WHEELING

(No. 11062)

Submitted May 5, 1959.          Decided May 12, 1959.

BROWNING, CALHOUN, JUDGES, dissenting.

*Joseph R. Curl, W. Frank Keefer, Curl, Keefer, Schafer & McKay,* for plaintiff in error.

*John B. Garden, Geo. G. Bailey,* for defendants in error.

BERRY, JUDGE:

The plaintiff in error, Charles A. Schenerlein, filed a petition for mandamus in the Circuit Court of Ohio County, against the defendants in error, the City of Wheeling, a municipal corporation and August L. Dailer, City Clerk of said City of Wheeling, praying that a peremptory writ of mandamus be issued by said Circuit Court requiring the defendants in error to place his name on the ballot as a candidate for councilman from the fourth ward of said city, to be voted on in the city election to be held on June 2, 1959. The petition filed in the Circuit Court alleged that the plaintiff in error was a qualified voter in said City of Wheeling and is registered to vote in precinct 67 of the fourth ward, had been a resident of the fourth ward for more than 60 days and a bona fide resident of the State of West Virginia for more than 1 year next preceding the institution of this proceeding, and that he was therefore eligible to become a candidate for councilman for the City of Wheeling. It also alleged that he had been nominated by petition signed by a requisite number of qualified voters of his ward and

properly filed, that he accepted said nomination and paid the required fees, all of which was done in accordance with the provisions of the city charter of the City of Wheeling, and therefore was entitled to have his name placed on the official ballot for said election.

An answer was filed by the defendants in error admitting all of the allegations contained in the petition except residency in the City of Wheeling or the fourth ward thereof, and denying he was a qualified voter in said city and eligible to be a member of the city council. No demurrer was filed to the answer.

When the proceeding came on for hearing before the Circuit Court of Ohio county on April 13, 1959, that Court directed that evidence be taken on the question of residence. The hearing indicated that after the nomination of the petitioner, acceptance thereof and payment of the required fees by him, the city clerk requested that an investigation or inquiry be made by the city attorney as to his eligibility or qualifications to be a candidate for councilman for the fourth ward. By letter dated April 8, 1959, the city clerk advised petitioner that pursuant to a ruling of the city solicitor he was not a bona fide resident of the City of Wheeling, and that he could not include his name on the ballot as a candidate for councilman for the City of Wheeling to be voted on at an election to be held on June 2, 1959. After the hearing, by order entered on April 18, 1959, the Circuit Court denied the writ and dismissed the petition on the grounds that petitioner was not a bona fide resident of the City of Wheeling.

When the application was made in this Court for a writ of error to the judgment of the Circuit Court, counsel for the plaintiff in error filed a brief in support of the application for a writ of error and orally presented same. The brief merely cited authority to support the contention that the petitioner, Charles A. Schenerlein, was a resident of the fourth ward of the City of Wheeling, but in the oral presentation counsel not only pre-

sented the question of residency, but stated that the city clerk had no power or authority to refuse to place petitioner's name on the ballot as a candidate for councilman in the city election to be voted on by the people, and that his eligibility or qualifications could be determined later in accordance with prior decisions of this Court.

A writ of error was granted by this Court on April 27, 1959, and leave having been granted to move to reverse the judgment of the Circuit Court in this case, a hearing was set on May 5, 1959. The case was submitted to this Court upon a joint stipulation in writing by counsel, waiving certain requirements of the statute and rules of this Court on the motion to reverse the judgment of the Circuit Court and upon briefs filed by counsel for both parties. No oral argument was made.

On the 12th day of May, 1959, this Court entered an order sustaining the motion to reverse the judgment of the Circuit Court of Ohio County rendered on the 18th day of April, 1959, and directing the Circuit Court to award the peremptory writ of mandamus requiring defendants in error to place the name of the petitioner, Charles A. Schenerlein, on the official ballot to be used in the city election to be held on June 2, 1959.

The city clerk had no power or authority to refuse to place the petitioner's name on the ballot. He should not have inquired into his eligibility or qualifications as he has no jurisdiction to do so and should have placed the name of petitioner on the ballot as requested. When the petition for a writ of mandamus was filed in the Circuit Court of Ohio County, that Court should have taken notice on its own motion of the lack of jurisdiction of the city clerk in this instance and should have issued a peremptory writ of mandamus requiring the city clerk to place the petitioner's name on the ballot. Mandamus lies to require a public official to discharge a nondiscretionary duty. *Glover* v. *Sims,* 121 W. Va. 407, 3 S. E. 2d 612; *State* v. *Sims,* 129 W. Va. 694, 41 S. E. 506. The

matter of his eligibility or qualifications, if it was desired to question same, should have been left for disposition until a later date. This matter has been passed on by this Court in prior decided cases. In the case of *McKnight* v. *Ballot Commissioners*, 86 W. Va. 496, 498, 103 S. E. 399, a quite similar situation to the case at bar was presented. It was contended that the petitioner was not eligible to have his name placed on the ballot in the primary election of Wetzel County because he had moved from the county, and it was shown that the petitioner had for many years resided in Wetzel County; that in 1918 he was employed by the state and that such employment required his presence in Kanawha County; that in 1919 he removed his family from Wetzel County to the City of Huntington where his children attended school, but that he always claimed his residence in the County of Wetzel and voted in said County. It was insisted by the petitioner that the ballot commissioners had no power to determine his eligibility; that he having filed the certificate in the form required by law, it was the duty of the commissioners to place his name on the ballot without undertaking to enter upon an inquiry as to whether or not he was legally qualified to hold the office. It was held in that case that "There is no authority conferred by law upon a board of ballot commissioners to try the question of the eligibility of candidates. To hold that such a board possesses this power would be to bring into existence many controversies and contests for which there would never be a reason if this question is left for determination by competent authority after the election."

Another case decided by this Court dealing with this matter is *Harwood* v. *Board of Ballot Commissioners*, 137 W. Va. 52, 70 S. E. 2d 24. The Court, in this case, not only approved the *McKnight* case, but in deciding the case used the syllabus of the same, in which the following language appears: "When a candidate for nomination in a primary election files a certificate with the clerk of the circuit court, from which it appears that he is eligible to hold the office for which he is a candidate, the

board of ballot commissioners have no authority to institute an inquiry for the purpose of determining the question of his legal qualifications to hold such office. The duty of said board is to place his name upon the ballot and allow the question of his eligibility to be determined by a competent tribunal, should he be elected thereto." It is true that the *McKnight* and *Harwood* cases involve the county court as ballot commissioners, but the city council or the city clerk in the case at bar has a similar position as ballot commissioner in a city election. This was so held in the case of *Lockhart* v. *Rogers*, 134 W. Va. 470, 478, 61 S. E. 2d 258. This case also followed the principle that eligibility of candidates cannot be inquired into by the city council or city clerk. The answers by respondents in the Lockhart case claimed that the petitioners were not eligible for the office of councilmen because they did not own property in the City of Welch. This Court, in that case, with regard to this question, indicated that such matter should be taken up at another time by stating: "We express no opinion as to the eligibility of petitioners, Belcher, Smith and Capehart."

The city clerk, as heretofore stated, had no power, authority or jurisdiction to refuse to place the name of the petitioner, or plaintiff in error, on the ballot to be voted on in the city election to be held on June 2, 1959. Such refusal was an illegal or unlawful act on his part. It has been held that mandamus will not lie to compel the performance of an illegal or unlawful act. 12 Michie's Jurisprudence, Mandamus, §3; *Huntington* v. *Heffley*, 127 W. Va. 254, 32 S. E. 2d 456; *Pardue* v. *County Court*, 105 W. Va. 235, 141 S. E. 874. Therefore, it follows that it should not be refused in a case in which the use of the writ is proper when the effect of such refusal is to permit the doing of an illegal or unlawful act. In the case at bar, the effect of the refusal on the part of the Circuit Court of Ohio County to issue the peremptory writ of mandamus directing the city clerk to place the petitioner's name on the ballot was in effect permitting him to do something which he had no legal

right to do and which clearly was done without authority or jurisdiction, both in the investigation conducted as to petitioner's eligibility and in refusing to place his name on the ballot.

As stated above, the question of lack of authority or jurisdiction on the part of the city clerk was called to this Court's attention when the petition for writ of error to the judgment of the Circuit Court was presented. Even if this had not been done, this Court by its own motion may take notice of such matter. *State ex rel. Hammond* v. *Worrell*, 144 W. Va. 83, 106 S. E. 2d 521, 525. In the *Hammond* case, this Court stated: "Lack of jurisdiction may be raised for the first time in this Court, and the Court of its own motion may take notice there." The lack of jurisdiction of the city clerk does not deprive the circuit court of jurisdiction in a case of this kind and this was so held in the case of *Adams* v. *Londeree*, 139 W. Va. 748, 83 S. E. 2d 127, but in the case at bar, the writ should not be refused by a court of competent jurisdiction which would in effect permit or allow said clerk to do something that he has no authority or jurisdiction to do. In the case of *Adams* v. *Londeree, supra,* the city clerk had already placed the name of Londeree on the ballot as a candidate for mayor and had performed his proper duty under the law, and the writ was refused by this Court, after stating that it had jurisdiction, on the grounds that the defendant, Londeree, was qualified to hold the office for which he had been nominated.

For the foregoing reasons, the motion to reverse the judgment of the Circuit Court of Ohio County refusing to award the peremptory writ of mandamus is sustained and the judgment of the Circuit Court of Ohio County is reversed; the case is remanded to that Court with directions to award the peremptory writ of mandamus as prayed for in the petition directing defendants in error to place the name of petitioner, Charles A. Schenerlein, on the ballot of the City of Wheeling as a candidate

for councilman for the fourth ward at the election to be held on June 2, 1959.

*Reversed and remanded,*
*with directions.*

CALHOUN, JUDGE, dissenting:

I respectfully dissent from the conclusion reached by the majority of the members of the Court, and would affirm the judgment of the Circuit Court of Ohio County.

The fourth point of the syllabus embodies a sound and well-settled proposition of law, but I am unable to discern that it has any proper application to the facts of this case. By the fourth point of the syllabus, the Court holds that lack of jurisdiction appears on the face of the record and, therefore, the Court, on its own motion, takes notice thereof. I take the view that no question of jurisdiction is presented, particularly as it relates to the circuit court; and the question relating to the authority of the city clerk, not having been raised in and passed upon by the lower court, it is not cognizable by this Court.

At the outset, we observe that the case came before the circuit court as a matter of original jurisdiction. If a case comes to the circuit court by appeal from the court of a justice of the peace, for instance, the circuit court is bound by the limits of the inferior court's jurisdiction, even though the circuit court would have had jurisdiction of the subject-matter in proceedings originating therein. *Richmond* v. *Henderson,* 48 W. Va. 389, 37 S. E. 653. The general rule as it relates to appeals from inferior tribunals is stated in the first point of the syllabus of the case of *Brotherton* v. *Robinson,* 85 W. Va. 753, 102 S. E. 700, as follows: "If a justice or other inferior court or tribunal has no jurisdiction to hear and determine a cause, an appeal from a judgment rendered therein does not confer upon a court of superior rank a jurisdiction not possessed by the former, though it may have had authority in the first instance to adjudicate the matter in controversy in its entirety."

Here the circuit court was not circumscribed or limited by the jurisdiction of an inferior court or "tribunal", because the case came before the circuit court, not by appeal, but as a matter of original jurisdiction.

Circuit courts of this State are created by the West Virginia Constitution, Article VIII, Section 1. Such courts "* * * have original and general jurisdiction of all matters at law where the amount in controversy, exclusive of interest, exceeds fifty dollars; of all cases of habeas corpus, mandamus, * * *. They shall also have such other jurisdiction, whether supervisory, original, appellate, or concurrent, as is or may be prescribed by law." Constitution, Article VIII, Section 12.

Code, 51-2-2, provides for jurisdiction of circuit courts in language similar to that of the Constitution. A portion of the statute is as follows: "The circuit court shall have supervision and control of all proceedings before justices and other inferior tribunals, by *mandamus,* prohibition and certiorari. * * *." (Italics supplied). If the City Clerk of the City of Wheeling is an "inferior tribunal", then the statute specifically gives the circuit court supervision thereof by mandamus. But if (as I believe), he is not a "tribunal" in that sense, I am unable to comprehend the efforts of the majority to attach "jurisdiction" to him. The word "jurisdiction" was carefully defined by this Court in the recent case of *In re Adoption and Custody of Underwood,* 144 W. Va. 312, 107 S. E. 2d 608. As I comprehend the meaning of the term, it must have some relation to the exercise of a judicial function, 11 M. J., Jurisdiction, 426, Section 2. The word "tribunal" is Latin and derives its original from the elevated seat where the tribunes administered justice. It has a strictly judicial connotation. Bouvier's Law Dictionary (3d Ed.), Vol. 2, page 3325; Black's Law Dictionary (4th Ed.). But, as I have indicated, whether or not it may be said that "Jurisdiction" is properly applied to the City Clerk in this connection, the limits thereof or the lack thereof is not binding upon the circuit

court, a court of original and general jurisdiction, in the exercise of its original jurisdiction.

West Virginia Constitution, Article III, Section 17, provides: "The courts of this state shall be open, * * *." It is said that the provisions of that section were borrowed from the Magna Charta. *McHenry* v. *Humes,* 112 W. Va. 432, 164 S. E. 501. Such constitutional provisions are said to embody a statement of the fundamental principle that it is the policy of the law to furnish a remedy for every wrong. 16A C.J.S., 1208, Constitutional Law, Section 709. Here was presented a genuine, justiciable controversy, of importance not only to the persons immediately concerned, but to the electorate also. The majority opinion correctly states that the city clerk had no authority or jurisdiction to make a judicial adjustment of that controversy. Must we conclude that the courts shall not be "open", in response to the almost sacred constitutional mandate, merely because the city clerk was without judicial power or authority? I can not accede to such a proposition.

It was the candidate himself who invoked the jurisdiction of the circuit court. While litigants can not confer jurisdiction of the subject-matter by mere consent or agreement, they may thus confer jurisdiction of the person. *State* v. *Worrell,* 144 W. Va. 83, 106 S. E. 2d 521. In a similar manner litigants may waive mere procedural errors. The case is before this Court as an appellate matter from the circuit court. I am not aware of any law or decision of this Court, cited in the majority opinion or otherwise, which would authorize us to look beyond the proceedings in the circuit court to determine questions relating to jurisdiction. The circuit court had jurisdiction. The same jurisdiction obtains by appellate procedure in this Court.

In the circuit court the case was tried on the basis of the question of relator's residence. It is reasonable to conclude that the relator is as eager as any other person to have the question of his eligibility determined at the

outset in order to avoid the possibility of a futile candidacy and an abortive election. In earlier decisions of this Court it is pointed out that it is important to determine the time at which a candidate for public office must be possessed of the requisite qualifications. If the qualification relates to the time of assuming the duties of the office, it may be said plausibly that the disqualification may be removed between the date of the nomination and the date for taking office; and, therefore, that an inquiry into that question prior to the date of taking office is premature. *State ex rel. Morrison* v. *Freeland,* 139 W. Va. 327, 81 S. E. 2d 685; *Adams* v. *Londeree,* 139 W. Va. 748, 83 S. E. 2d 127. But in this instance the city charter provides: "No one shall be eligible to a seat in council who shall not be, *when nominated,* a qualified voter, in the City of Wheeling." (Italics supplied). The question here is immediate, not merely conjectural or anticipatory. A competent court should be "open" for a determination of that question.

In the case of *State ex rel. Morrison* v. *Freeland,* 139 W. Va. 327, 81 S. E. 2d 685, it was held that a duly qualified member of a city council has such an interest that he may, by proper judicial proceedings, question the qualifications of another person claiming the right to be seated as a member of the same body. In the present case, both the city clerk and the city solicitor have raised the question, but it was *relator himself* who asked a court of original and general jurisdiction to make a judicial determination of his qualification in order that he might know whether or not he is a qualified candidate. This Court turns the litigants away empty-handed by an assertion of the wholly untenable proposition that, somewhere in some rather indefinite place in the proceeding, there is lack of "jurisdiction". Then, as if doubting the soundness of that proposition, the majority opinion, in the third point of the syllabus, adds that: "Mandamus will not lie to compel the performance of an illegal or unlawful act, * * *." It is not made clear that the city clerk has violated any positive law. Rather the alleged

"illegal or unlawful act" is a conclusion from the major premise that the city clerk lacks authority to perform a judicial function. That, I apprehend, is the very reason the litigants, apparently by common consent, invoked the jurisdiction of a competent judicial tribunal.

That there is no jurisdictional question presented to this Court on writ of error to the judgment of the circuit court, to me seems inescapable. Assuming for the moment that I am correct in this respect, what is the effect of the decision of the majority? It means that this Court has, *sua sponte*, searched out and passed upon a nonjurisdictional question which was not raised in nor passed upon by the lower court. That, in my judgment, means that this Court has taken a liberty wholly unwarranted by any precedent of which I am cognizant.

In the case of *State* v. *Bragg*, 140 W. Va. 585, 87 S. E. 2d 689, this Court, by overruling approximately thirty prior decisions, held that it had the right to consider alleged errors of the trial court in the admission or rejection of evidence, over objection and exception, where assigned as a ground for a new trial, even though not incorporated in the bill of exceptions, assigned as a basis of error in a petition for writ of error, set forth in briefs of counsel or otherwise brought to the attention of this Court. But here, forsooth, assuming that the question is not jurisdictional, the majority goes completely beyond the rule laid down in the *Bragg* case and, on its own motion, considers a question which was not raised in the lower court and, of course, not considered or passed upon by the trial court.

Furthermore, I feel that the recent case of *Adams* v. *Londeree*, 139 W. Va. 748, 83 S. E. 2d 127, has settled the question here involved in a manner contrary to the majority opinion. In that case, in an original proceeding in mandamus in this Court, it was sought to compel the municipal ballot commissioners to strike the name of Joseph W. Londeree, Democratic candidate for Mayor of the City of South Charleston, from the ballot for a

general election. The relators charged that Londeree was not a resident of the city by reason of the fact that he lived within the bounds of the United States Naval Reservation situated within the bounds of the municipality. The writ of mandamus was denied, but only after this Court had considered at length the residential qualification of the candidate and determined that he was, in fact, a resident. This Court did not, as in the first point of the syllabus of the instant case, base its holding on the ground that the duty of the ballot commissioners was merely ministerial; and then decline to pass upon the qualification of Londeree at that time, but stated, "* * * to hold that mandamus can not be invoked in such cases as to a nominee for office would have the effect of denying any remedy prior to the election and, where the candidate elected could not qualify as to the office sought, would have the effect of rendering the election as to that office a nullity. Surely no such result could have been contemplated. It would not tend to induce orderly elections." The second point of the syllabus of the *Londeree* case is as follows: "Where a person nominated to office is required by law to possess certain qualification at the time of his election, mandamus will lie to determine the qualification." With reference to the lack of authority of the ballot commissioners to institute an inquiry as stated in the first point of the syllabus of the instant case, the Court stated: "But lack of jurisdiction of such a board cannot be determinative of jurisdiction of a court having original jurisdiction in mandamus." The majority opinion in the instant case cites the *Londeree* case to the same effect, but undertakes a labored distinction which I am unable to comprehend. The net result seems to be that this Court will assume jurisdiction to determine that a candidate is qualified, but that it will disavow jurisdiction to determine that he is not qualified. See also *State ex rel. Morrison* v. *Freeland,* 139 W. Va. 327, 81 S. E. 2d 685.

For the reasons stated I would hold that the circuit court had jurisdiction to determine the question at issue;

that this Court has like jurisdiction; that the findings of the lower court relative to residence were abundantly justified; and, therefore, I would affirm the judgment of the Circuit Court of Ohio County.

I am authorized to say that Judge Browning concurs in this dissent.